# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re A2P SMS ANTITRUST LITIGATION )<br><br>)<br>)<br>)<br>THIS DOCUMENT RELATES TO:  )<br>ALL ACTIONS  )<br>)<br>)<br>) | Master File: 12 CV 2656 (AJN)<br><br>ECF Case |

# MEMORANDUM OF LAW IN SUPPORT OF AGGREGATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

PLAINTIFFS' ALLEGATIONS .....................................................................................4

STANDARD FOR MOTION TO DISMISS....................................................................7

ARGUMENT ...................................................................................................................9

I.      Plaintiffs' Failure To Allege That The Aggregators Conspired With Each Other Is
        Fatal To Their Section 1 Claims. ...................................................................................9

        A.      No Specific Agreement Among The Aggregators Is Alleged. ................................9

        B.      The Complaint Provides No Basis To Infer Any Aggregator Agreement.............10

II.     Plaintiffs' Pleading Failures Require Dismissal Of Their Section 1 Claims. ...................13

        A.      Plaintiffs Fail To Allege That The Aggregators Refused To Deal. .......................13

        B.      Plaintiffs Fail To Allege That The Aggregators Engaged In Price-Fixing............14

III.    Plaintiffs' Section 2 Conspiracy To Monopolize Claim Is Insufficiently Pled. ...............15

IV.     Plaintiffs Fail To Allege That They Have Standing To Bring Their Antitrust
        Damages Claims. .........................................................................................................16

V.      Plaintiffs' Claims Are Barred By The Statute of Limitations............................................17

        A.      Plaintiffs' Refusal To Deal Claim Is Time-Barred. ..............................................17

        B.      Plaintiffs' Price-Fixing Claim Is Time-Barred. ....................................................18

        C.      Plaintiffs' Conspiracy To Monopolize Claim Is Time-Barred. .............................19

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...................................................................................7

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3409 (2010).........................7

*Arista Records LLC v. Lime Group LLC*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007).....................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................7, 8, 9, 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................. *passim*

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984)..............................................................................................7

*Credit Chequers Information Services, Inc. v. CBA, Inc.*,
   No. 98 Civ. 3868, 1999  WL 253600 (S.D.N.Y. Apr. 29, 1999),
   *aff'd*, 205 F.3d 1322 (2d Cir. 2000) ..................................................................15

*David Orgell, Inc. v. Geary's Stores, Inc.*,
   640 F.2d 936 (9th Cir. 1981) .............................................................................18

*Discover Financial Services v. Visa U.S.A. Inc.*,
   598 F. Supp. 2d 394 (S.D.N.Y. 2008)...............................................................15

*Frangipani v. HBO*,
   No. 08-Civ-5676, 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010)...........................14

*GTE New Media Services v. Ameritech Corp.*,
   21 F. Supp. 2d 27 (D.D.C. 1998).......................................................................16

*Garber v. Legg Mason, Inc.*,
   537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009) .......7

*Higgins v. New York Stock Exchange, Inc.*,
   942 F.2d 829 (2d Cir. 1991)...............................................................................17

*Hinds County, Mississippi v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009).............................................................2, 12

*Howard Hess Dental Laboratories Inc. v. Dentsply International, Inc.*,
    602 F.3d 237 (3d Cir. 2010)....................................................................................7, 12, 13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)......................................................................................................16

*In re Air Cargo Shipping Services Antitrust Litigation*,
    No. 06-MD-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ................................8

*In re Buspirone Patent Litigation*,
    185 F. Supp. 2d 363 (S.D.N.Y. 2002)....................................................................17, 18

*In re Ciprofloxacin Hydrochloride Antitrust Litigation*,
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) .........................................................................18

*In re Elevator Antitrust Litigation*,
    502 F.3d 47 (2d Cir. 2007)................................................................................. *passim*

*In re Graphics Processing Units Antitrust Litigation*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................................12

*In re Public Offering Antitrust Litigation*,
    No. 98 Civ. 7890, 2004 WL 350696 (S.D.N.Y. Feb. 25, 2004) ..................................16

*Integrated System & Power, Inc. v. Honeywell International, Inc.*,
    713 F. Supp. 2d 286 (S.D.N.Y. 2010).........................................................................14

*Johnson v. Nyack Hospital*,
    891 F. Supp. 155 (S.D.N.Y. 1995), *aff'd*, 86 F.3d 8 (2d Cir. 1996) .......................17

*Kasada, Inc. v. Access Capital, Inc.*,
    No. 01 Civ. 8893, 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004)................................14

*Mozaffarian v. Breitling U.S.A., Inc.*,
    No. 94 Civ. 1133, 1998 WL 827596 (N.D. Cal. Nov. 19, 1998)................................12

*Nynex Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998)......................................................................................................15

*Paycom Billing Services, Inc. v. Mastercard International, Inc.*,
    467 F.3d 283 (2d Cir. 2006).........................................................................................17

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002).........................................................................................12

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007)..................................................................................7, 9

*RxUSA Wholesale, Inc. v. Alcon Laboratories, Inc.*,
    661 F. Supp. 2d 218 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010)................15, 16

*Sapienza v. Osleeb*,
    550 F. Supp. 1304 (E.D.N.Y. 1982) ...................................................................19

*Schwimmer v. Sony Corp. of America*,
    637 F.2d 41 (2d Cir. 1980)...............................................................................17

*Tese-Milner v. Diamond Trading Co.*,
    No. 04 Civ. 5203, 2011 WL 4501336 (S.D.N.Y. Sept. 29, 2011) ...........................18

*Toys "R" Us, Inc. v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ...........................................................................11

*Vitale v. Marlborough Gallery*,
    No. 93 Civ. 6276, 1994 WL 654494 (S.D.N.Y. July 5, 1994) ...............................18

*U.S. v. Colgate & Co.*,
    250 U.S. 300 (1919)........................................................................................12

*Wellnx Life Sciences Inc. v. Iovate Health Services Research Inc.*,
    516 F. Supp. 2d 270 (S.D.N.Y. 2007)............................................................11, 13

*Williams v. Citigroup, Inc.*,
    No. 08 CV 9208, 2009 WL 3682536 (S.D.N.Y. Nov. 2, 2009),
    *aff'd in relevant part*, 433 F. App'x 36 (2d Cir. 2011) .........................................15

*Woodbridge Plastics, Inc. v. Borden, Inc.*,
    473 F. Supp. 218 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1293 (2d Cir. 1979)...............19

## CODES & STATUTES

15 U.S.C. § 15b............................................................................................17

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Air2Web, Inc., Ericsson Inc., mBlox Incorporated, OpenMarket Inc., Sybase, Inc., SoundBite Communications, Inc., Syniverse Technologies LLC (f/k/a Syniverse Technologies, Inc.), Vibes Media, LLC, and 3Cinteractive, LLC (the "Aggregator Defendants" or "Aggregators") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the claims against them in the Consolidated Amended Complaint, dated June 14, 2012 ("Complaint").[1]

## PRELIMINARY STATEMENT

Plaintiffs attempt to allege three conspiracy-based antitrust claims.  However, with respect to the Aggregators, Plaintiffs describe nothing more than legitimate, independent business conduct couched in conclusory assertions of conspiracy.  This is the very type of pleading rejected in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  There, the Supreme Court mandated that because of potentially massive and uncontrollable discovery costs, antitrust conspiracy claims based on conclusory allegations and factual assertions equally consistent with unilateral self-interested conduct must be dismissed.  *Id.* at 556-57.  Because that is all Plaintiffs proffer, the claims in the Complaint, as alleged against the Aggregators, must be dismissed.

By way of background, the nine Aggregators bringing this motion to dismiss are service providers who assist companies that wish to send text messages (or "SMS" for "short message service"), such as coupon codes, price promotions, flight delay information, and sports scores, to consumers in bulk.  In connection with such messages—typically referred to as "application-to-

---

[1] In joining the Aggregators' Motion to Dismiss, SoundBite Communications, Inc. ("SoundBite") does not admit that it is an "aggregator" or that it performs any "aggregation" of text traffic as alleged in the Complaint.  While SoundBite must accept as true factual assertions of the Complaint for purposes of this motion, SoundBite reserves its right to present evidence to the contrary in the future.

person" or "A2P" SMS, transmitted using five or six digit codes knows as "common short codes" ("CSC")—Aggregators perform various services for both A2P providers and wireless carriers, such as defendants Verizon Wireless, AT&T Mobility LLC, Sprint Nextel Corp., T-Mobile USA, Inc., and U.S. Cellular Corp (the "Carriers"). These services include connecting the A2P providers to the Carriers, each of which has its own technical specifications and connection requirements, and providing advice on how to make messages comply with standards established under the law and by the Carriers.

Significantly for purposes of this motion, the Complaint contains no specific allegations of any kind concerning any activities of any specific Aggregator. Not a single one. Indeed, the *only* specific allegations about each Aggregator are in the "Parties" section, where their addresses and corporate names are provided. No other details follow: the remainder of the Complaint refers broadly to "Defendants" or "Aggregator Defendants" without specifying any allegedly anticompetitive conduct or agreement by any particular Aggregator. For this reason alone, the Complaint should be dismissed against the Aggregators. *See Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (dismissing complaint against certain defendants for plaintiff's failure to allege specific actions by those defendants); *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 577 (S.D.N.Y. 2007) (dismissing complaint alleging unlawful mandatory regime in record industry as to defendants for whom specific acts not alleged). "To state a claim against each Defendant, [n]amed Plaintiffs must 'make allegations that plausibly suggest that *each* Defendant participated in the alleged conspiracy.'" *Hinds Cnty.*, 620 F. Supp. 2d at 513 (emphasis added; citation omitted).

This is not just a technicality, particularly in a case like this that sweeps across a diversity of industry players, lumping together the nine Aggregator Defendants with the five Carriers, a

trade association (CTIA), and a content review provider (WMC Global). *Twombly* requires the Court to disregard conclusory allegations like "defendants had an anticompetitive agreement" and review the allegations (or lack thereof) for each defendant to determine whether there is enough factual heft supporting the claim to justify the enormous burden and expense of defending an antitrust claim. Plaintiffs do not even come close. They make no attempt to set forth in the Complaint the circumstances relating to the Aggregators: the different arrangements they have with their customers, when or how they supposedly joined the alleged conspiracy, how they price their services, or whether their conduct goes beyond the normal and obviously lawful commercial activity of providing services to their customers.

Even taken as a group, the absence of any facts suggesting an antitrust violation by the Aggregators is striking. Plaintiffs do not allege that the Aggregators agreed to anything with respect to the original design of the CSC system or the designation of Neustar (the entity from which content providers lease CSCs) as the CSC administrator, or that the Aggregators asserted any control over the CTIA.[2] While Plaintiffs allege the existence of vertical agreements between Aggregators and Carriers, *e.g.,* Compl. ¶ 96, they do not allege that there is anything unlawful about those vertical agreements.[3] And Plaintiffs do not, and cannot, allege that the Aggregators, all of which compete with each other, have agreed among themselves or with anyone about the fees they charge for their services—or for anything else for that matter. Stripped, as it must be, of its conclusory recitation of various antitrust terms of art, the Complaint merely says that the Aggregators all provide a similar type of service to their customers—*i.e.*, assisting them in

---

[2] We do not mean to suggest that the CSC system—which has been functioning in plain sight for nearly a decade—is anticompetitive. It is decidedly procompetitive since it facilitates the delivery of text messages that comply with the law. The Court need not decide this issue in deciding whether the Complaint states a claim against the Aggregators.

[3] Should Plaintiffs try to reframe their allegations in such a fashion—either by amendment or in response to this motion—Aggregators will address such claims at that time.

sending messages to carriers using the rules established by the carriers.  This parallel conduct is insufficient to state a federal antitrust claim.  There simply must be more before an entire industry can be put through the massive burden and expense of antitrust discovery and litigation.

Finally, the Sherman Act imposes a four-year statute of limitations.  Because the Complaint alleges that the A2P regime has been operating in plain sight since 2003, the claims must be dismissed *with prejudice*.

## PLAINTIFFS' ALLEGATIONS

The CTIA Board, which Plaintiffs allege was "largely comprised of the CEOs of the Carrier Defendants," voted in 2003 to establish specific requirements for A2P SMS traffic. Compl. ¶ 53.  Under these requirements, Plaintiffs must use CSCs to transmit their A2P SMS which they lease from a company called Neustar.  The Carriers will not accept traffic from Plaintiffs (or the Aggregators) without a CSC.  *Id.* ¶¶ 56-58.  The CSC rates are allegedly set by Neustar.  Compl. ¶¶ 66-68.  The Carriers also require pre-approval of A2P message content, before the Carriers will transmit A2P SMS to their customers, and the Carriers will not transmit A2P SMS, if the A2P provider subsequently deviates from the approved content.  *Id.* ¶¶ 82-88. More specifically:

- "[T]he Carrier Defendants conspired to set up a system in 2003 under which persons transmitting A2P SMS could not use inexpensive ten-digit telephone numbers but were forced to use 'common short codes' ('CSCs') — five-digit (and later six-digit) numbers — at materially higher lease and transmission charges with additional fees for connectivity and content review, all of which resulted in substantial overcharges to persons transmitting A2P SMS . . . ." *Id.* ¶ 6.

- "[T]he Carrier Defendants agreed that they would not honor [CSC Lessees' *i.e.*, A2P SMS providers] use of ten-digit telephone numbers . . . [and] [i]nstead, [CSC Lessees] would be forced into a privately-administered system using the five-digit (later also six-digit) CSCs." *Id.* ¶ 55.

4

- "The Carrier Defendants used their control of Defendant CTIA . . . to cause the CTIA to issue guidelines and rules calling for the use of five-digit (and later six-digit) CSCs for transmission of A2P SMS, inhibiting the use of standard ten-digit numbers for transmission of A2P SMS, and imposing volume limits on text messages sent from ten-digit numbers." *Id.* ¶ 7.

- "The CTIA incorporated these restrictions into its Intercarrier Messaging Guidelines for carriers and providers of wireless content, which the Carrier Defendants agreed to enforce as rules to justify refusals to transmit A2P SMS sent through ten-digit numbers and to require aggregators to block A2P SMS coming from ten-digit numbers." *Id.* ¶ 57.

- "[E]ach Carrier Defendant refused to deal with any CSC Lessee seeking to use ten-digit numbers" and required all CSC Lessees to use CSCs leased from Neustar. *Id.* ¶ 58.   "Thus any CSC Lessee seeking to reach subscribers of any of the Carrier Defendants or any other carrier members of CTIA . . . had to use CSCs." *Id.* ¶ 59.

- "The Carrier Defendants have controlled the CTIA and its operation of the CSC system and set the rates in the CTIA's contract with Neustar." *Id.* ¶ 75.

- CSC Lessees' are subject to a "program review system established by an agreement among the Carrier Defendants." *Id.* ¶ 83.  "Program review fees have been coordinated among the Carrier Defendants, who have all [agreed to charge] review fees within a certain range.  The Aggregator Defendants collect the program review fees for the Carrier Defendants." *Id.* ¶ 85.

- "The Carrier Defendants agreed to prohibit users of CSC from sending A2P SMS directly to the Carrier Defendants and instead required them to send such messages through a limited number of companies known as aggregators." *Id.* ¶ 9.

As Plaintiffs allege, because the Carriers will not accept A2P SMS traffic directly from most A2P providers, the Aggregators enter into contracts both with the Carriers, to which they deliver traffic, and A2P providers.  As part of their services to the Carriers and A2P providers, the Aggregators are required to determine that the A2P traffic they aggregate and deliver meets each Carrier's requirements.  As noted repeatedly by Plaintiffs, failure to comply with a Carrier's requirements results in a Carrier's refusal to accept the traffic.  *Id.* ¶¶ 50, 56, 86.  The

Aggregators also collect fees for the Carriers for services the Carriers provide, *e.g.,* the Carriers' per-message charges for transmission of the A2P SMS traffic and any content review fees charged by Carriers.  *Id.* ¶¶ 85, 101.  In addition to collecting these Carrier fees, Aggregators charge per-message and connectivity fees of their own for services they provide.  *Id.* ¶ 101.

On the basis of these allegations, Plaintiffs attempt to allege three causes of action against the Aggregators.

1. *Concerted Refusal to Deal*: Plaintiffs claim that all Defendants engaged in a "combination or conspiracy" pursuant to which they "agreed to and did refuse to deal . . . with any CSC Lessees seeking to transmit A2P SMS through ten-digit numbers."  *Id.*  ¶ 122.

2. *Price Fixing*: Plaintiffs assert that Defendants, through a "combination or conspiracy," forced class members to lease CSCs "through co-conspirator Neustar" at artificially high prices; forced class members to connect to the Carriers through the Aggregators and pay unnecessary connectivity and per-message fees; and charged unnecessary fees for review of proposed message content. *Id.* ¶ 131.

3. *Conspiracy to Monopolize*: Plaintiffs claim that the Defendants conspired to eliminate competition in the A2P SMS market by "prohibiting the transmission of A2P SMS from ten-digit numbers" and "requiring the transmission of A2P SMS through CSCs leased on coordinated terms through a joint selling agent, Neustar." *Id.* ¶ 145.

For the reasons explained herein, Plaintiffs' claims, as alleged against the Aggregators, should be dismissed as a matter of law.

6

## STANDARD FOR MOTION TO DISMISS

While the Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc), *cert. denied*, 130 S. Ct. 3409 (2010), it must not give any effect to "legal conclusions couched as factual allegations," *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ( "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Plaintiffs may not rely on "bald contentions, unsupported characterizations, and legal conclusions." *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009) (citation omitted).  Rather, they must provide factual allegations sufficient "to raise a right to relief above the speculative level."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Supreme Court's decision in *Twombly* is particularly apposite here, because it upheld dismissal of conspiracy claims under the Sherman Act.  To survive dismissal, each of Plaintiffs' three claims against the Aggregators must allege that the Aggregators entered into an anticompetitive agreement, *i.e.*, a conspiracy.  *See id.* at 553 ("[T]he crucial question" in an antitrust case under § 1 is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement.") (citation omitted); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010) ("Section 2 claims, in contrast, do not require an agreement except where, as here, the specific charge is conspiracy to monopolize.") (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 n.13 (1984)).

7

Conduct that is equally consistent with independent business judgment however does not suffice. *Twombly*, 550 U.S. at 553-54.

Similarly, in *Iqbal,* the Supreme Court further emphasized that a claim is facially plausible only "when the plaintiff pleads *factual content* that allows the court to draw a *reasonable inference* that the defendant is liable for the misconduct alleged."  556 U.S. at 678 (emphasis added).  A court must "draw on its judicial experience and common sense" in assessing the allegations of a complaint, which does not cross the line between possibility and plausibility, when the allegations are "more likely explained by, lawful, unchoreographed free-market behavior" or "obvious alternative explanation[s]."  *Id.* at 679-82 (emphasis added; internal quotations and citation omitted).  "[A]verments of agreements made at some unidentified place and time" are "insufficient to establish a plausible inference of agreement, and therefore to state a claim."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  An allegation that the defendants were party to a conspiracy, but that fails to identify "any particular activities by [the] particular defendant[s]" amounts to "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever."  *Id.* at 50-51 (citation omitted); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2008 WL 5958061, at *8 (E.D.N.Y. Sept. 26, 2008) (dismissing antitrust complaint because it "does not identify with any specificity how each defendant joined the conspiracy, or what circumstances provided the opportunity to do so.").

Nor is an allegation of parallel conduct (that is, that the parties acted in the same manner towards the plaintiffs) enough.  As the Supreme Court made clear,

> [a]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest a conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.

*Twombly,* 550 U.S. at 556-57.  To survive a motion to dismiss, a plaintiff must offer allegations "plausibly suggesting (not merely consistent with) agreement."  *Id.* at 557.

**ARGUMENT**

I.    **Plaintiffs' Failure To Allege That The Aggregators Conspired With Each Other Is Fatal To Their Section 1 Claims.**

Plaintiffs' Complaint offers no factual allegations of (a) any express agreement among the Aggregator Defendants or (b) conduct from which a conspiracy may be plausibly inferred. Such allegations, however, are essential to each of Plaintiffs' claims, and Plaintiffs' failure to so plead mandates dismissal.

A.    **No Specific Agreement Among The Aggregators Is Alleged.**

The Complaint does not allege that the Aggregators had any agreement—illegal or otherwise—with each other about anything.  Rather, the Complaint contains a few vague and generic allegations that "Defendants" collectively violated the antitrust laws or that the Aggregators "conspired" with the Carriers or unnamed co-conspirators—*e.g.,* "Neustar conspired with Defendants . . . to fix or coordinate prices for CSC leases" or "Defendants' refusal to deal has denied CSC Lessees access to ten-digit A2P SMS transmission."  Compl. ¶¶ 42, 65.  Such conclusory and nonspecific allegations do not state a plausible conspiracy claim.  *See In re Elevator Antitrust Litig.,* 502 F.3d at 50-51 & n.5 (deeming insufficient general allegations that defendants "(a) [p]articipated in meetings . . . to discuss pricing and market divisions; (b) [a]greed to fix prices . . . ; (c) [r]igged bids . . . ; (d) [e]xchanged price quotes; (e) [a]llocated markets . . . ; (f) '[c]ollusively' required customers long-term contracts; and (g) [c]ollectively took actions to drive independent . . . companies out of business."); *see also Iqbal,* 556 U.S. at 678; *Port Dock & Stone Corp.,* 507 F.3d at 121.

9

**B.      The Complaint Provides No Basis To Infer Any Aggregator Agreement.**

The Complaint likewise fails to proffer any specific factual allegations from which an illegal agreement involving the Aggregators may be plausibly inferred.  The Complaint provides no detail on when or where any agreement was made, which of the Defendants attended particular meetings, or any detail about what was agreed to.  *Twombly*, 550 U.S. at 565 n.10 ("[T]he pleadings mentioned no specific time, place or person involved in the alleged conspiracies. . . .  [T]he complaint here furnishes no clue as to which of the four [defendants] . . . supposedly agreed, or when and where the illicit agreement took place."); *see also In re Elevator Antitrust Litig.,* 502 F.3d at 50.

With regard to the Aggregators, the Complaint alleges only that they:  (1) connect Plaintiffs to the Carriers and transmit Plaintiffs' text traffic to the Carriers pursuant to the terms and requirements of the Carriers, (2) charge both the Carriers and Plaintiffs fees for their services, (3) collect fees charged to Plaintiffs by the Carriers for services provided by the Carriers, (4) profit from the provision of their services to Plaintiffs and the Carriers, and (5) are aware that competing aggregators in the marketplace also provide similar services to A2P SMS providers and Carriers.  Because these allegations are equally consistent with independent business judgment they cannot—without more—support an inference of illegal agreement.  *See Twombly*, 550 U.S. at 553-54.[4]

Plaintiffs' allegation that the Aggregators entered into similar contracts with Carriers does not cure this defect.  The existence of similar contracts does not provide a sufficient basis upon which to infer an illegal agreement among the Aggregators.  *See id.* at 557 ("[W]hen

---

[4] Plaintiffs, in fact, never allege that the Aggregators were involved in the creation of the CSC system to which they object.  Though paragraphs in the Complaint refer at times to all "Defendants," none describing the formation of the allegedly illegal CSC system and related restrictions refers to the Aggregators.

allegations of parallel conduct are set out in order to make a [Section] 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."); *In re Elevator Antitrust Litig.,* 502 F.3d at 51 (similar contract terms can mean legitimate similar commercial goals and similar pricing can mean legitimate competition); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 934 (7th Cir. 2000) (where it was alleged that Toys "R" Us was coordinating a conspiracy into which they pulled toy manufacturers, the "critical question" was whether there was a horizontal agreement among the toy manufacturers).

Likewise, mere compliance with their suppliers' terms and conditions of dealing (*i.e.*, the Carriers' requirements) does not support an inference that the Aggregators had an illegal arrangement.  The Court reached that very conclusion in *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, a case factually similar to the present case. The *Wellnx* Court concluded that plaintiff, a manufacturer of dietary supplements, failed to plausibly allege the existence of the required horizontal conspiracy among the defendants: publishers of bodybuilding periodicals.  516 F. Supp. 2d 270, 281-82 (S.D.N.Y. 2007).  Similarly to the present case, plaintiff alleged parallel conduct of the publisher defendants in canceling and rejecting Wellnx's advertisements, including that: (1) each publisher was aware that Wellnx's competitor (Iovate) had solicited similar agreements from other publishers; (2) each publisher had a substantial profit motive for refusing Wellnx's advertising because Iovate had offered financial incentives or threatened to withdraw its own advertising business; and (3) the refusal to deal was uniformly imposed by each publisher.  *Id*. at 281-82, 290-91.  The Court found that although such conduct is "consistent with conspiracy, it is just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of

the market." *Id*. at 291 (quoting *Twombly*); s*ee also Dentsply,* 602 F.3d at 255-56 (where only

conclusive allegations of horizontal agreements are made, the existence of multiple vertical

agreements is not enough to plausibly infer horizontal agreement); *PepsiCo, Inc. v. Coca-Cola*

*Co.*, 315 F.3d 101,110-11 (2d Cir. 2002) (finding where there are vertical agreements between

alleged participants in a conspiracy, conspiracy is not established without a compelling showing

of horizontal agreement); *Mozaffarian v. Breitling U.S.A., Inc*., No. 94 Civ. 1133, 1998 WL

827596, at *3 (N.D. Cal. Nov. 19, 1998) ("[A] dealer may acquiesce to a supplier's pricing

policies without implicating either the supplier or the dealer in an illegal conspiracy or

combination.") (citing *U.S. v. Colgate & Co.*, 250 U.S. 300 (1919)).  The same conclusion

follows in this case for the claims against the Aggregators.

 Plaintiffs also try to use participation in trade associations to establish a conspiracy.

Plaintiffs allege that "Defendants attended CTIA and other meetings, trade shows and

conferences" purportedly to "discuss and effectuate" the supposed conspiracy.  Compl. ¶ 123.

The fact that some or all Defendants periodically may have met at industry trade association

meetings is insufficient to support an inference of agreement among the Aggregators.  *Hinds*

*Cnty.*, 620 F. Supp. 2d at 513 ("[P]articipation in trade associations or conferences cannot

support the [complaint's] allegations of a conspiracy."); *In re Graphics Processing Units*

*Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade

shows and events is presumed legitimate.").

 Finally, Plaintiffs allege that the Aggregators had knowledge of allegedly conspiratorial

activities by the Carriers and their fellow aggregators.  *See, e.g.*, Compl. ¶ 103.  Mere awareness

of the illegal activities of other parties, however, provides no basis to infer an agreement to

participate in the activities.  As the Third Circuit explained in *Dentsply*: "infer[ences] that the

[competitors] were aware of each other's involvement in the conspiracy because, as market participants, they all knew that Dentsply was the dominant player in the . . . market and because they all had an economic incentive to create and maintain a regime in which Dentsply reigned and the [competitors] did its bidding" "fell short" of alleging conspiracy. *Dentsply*, 602 F.3d at 255-56.

Likewise, in *Wellnx* the Court dismissed plaintiff's complaint, despite an allegation of "knowledge." The Court found that plaintiff's statement that each publisher of bodybuilding publications "was aware" that defendant, a manufacturer of dietary supplements, had "solicited similar agreements" from the other publishers to cancel or reject the plaintiff's advertisements did not plausibly support an inference of conspiracy. 516 F. Supp. 2d at 290. Even if "each publisher knew that its horizontal competitors were going to be presented with the same offer or threat," such an allegation would not support an inference of an unlawful agreement. *Id.* at 291.

In sum, absent any non-conclusory allegation of a horizontal agreement among the Aggregators linking them to the alleged Carriers' agreement, or factual allegations from which one could plausibly infer such an agreement, Plaintiffs' Section 1 claims must be dismissed as against the Aggregators.

## II.     Plaintiffs' Pleading Failures Require Dismissal Of Their Section 1 Claims.

Separate and apart from failing to allege the necessary conspiratorial agreement, each of Plaintiffs' Section 1 claims lack sufficient factual detail to survive a motion to dismiss with respect to the Aggregators.

### A.     Plaintiffs Fail To Allege That The Aggregators Refused To Deal.

In asserting their claim of concerted refusal to deal, Plaintiffs fail to allege that the Aggregators actually ever refused to deal with anyone, ever sought anyone's agreement not to deal, or even that an agreement by the Aggregators was in any way necessary to the alleged

refusal to deal.  Plaintiffs, in fact, admit that the Carriers were and are capable of bypassing the

Aggregators and providing service directly to A2P providers.  Compl. ¶ 94.  Plaintiffs' alleged

refusal to deal against "Defendants" consists solely of the same vague and conclusory assertions

as in the case of their alleged conspiracy.  *See, e.g.,* Compl. ¶ 60 (referring to Defendants'

boycott of ten-digit numbers); *id.* ¶ 65 ("Defendants' refusal to deal"); *id.* ¶ 147 (same).  The

Complaint thus lacks the factual detail necessary to plead refusal to deal against the Aggregators.

*See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 293 (S.D.N.Y.

2010) (dismissing refusal to deal claim under the Sherman Act's § 1 where defendants "had no

direct ability" to effectuate the alleged boycott); *Frangipani v. HBO*, No. 08-Civ-5676, 2010 WL

1253609, at *4 (S.D.N.Y. Mar. 16, 2010) (dismissing refusal to deal claim because plaintiff did

not plead factual allegations supporting the claim, including an agreement among the relevant

defendants to refuse to deal with plaintiff).

### B.    Plaintiffs Fail To Allege That The Aggregators Engaged In Price-Fixing.

Plaintiffs' price-fixing claim fails to include any non-conclusory allegations that the

Aggregators agreed to set or fix any prices.  Plaintiffs never allege that the Aggregators agreed

with any Carrier to raise, lower, or stabilize prices for any service or engaged in any conduct that

in fact raised, lowered, or stabilized prices.  While at times trying to confuse the fees set by the

Carriers with those charged by the Aggregators for their services, *see, e.g.* Compl. ¶ 10, Plaintiffs

never actually allege that any Aggregator participated in any agreement to impose any fee or that

any of the Aggregators charge the same fees for any of their services.  In fact, Plaintiffs say

nothing about any prices charged by any Aggregator for anything.  Such an omission dooms

Plaintiffs' price-fixing claim.  *See Kasada, Inc. v. Access Capital, Inc.,* No. 01 Civ. 8893, 2004

WL 2903776, at *7 (S.D.N.Y. Dec. 14, 2004) (dismissing "Plaintiffs claims of price fixing in the

factoring industry [because they] are completely conclusory, [and] unsupported by factual allegations").

### III.   Plaintiffs' Section 2 Conspiracy To Monopolize Claim Is Insufficiently Pled.

Like their Section 1 claims, Plaintiffs' Section 2 claim against the Aggregators also must be dismissed, because the Complaint fails to allege a conspiracy involving the Aggregators.

As discussed above, actions equally consistent with independent self-interested business conduct as with conspiracy are not a sufficient basis to infer a conspiracy.  *See In re Elevator Antitrust Litig.*, 502 F.3d at 50 (affirming dismissal of Section 2 conspiracy claim for failure to allege facts inconsistent with legitimate business conduct); *see also Nynex Corp. v. Discon, Inc.,* 525 U.S. 128 (1998) (vacating order allowing charge of conspiracy to monopolize to proceed where complaint failed to state a claim under Section 1); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 240 (E.D.N.Y. 2009) (dismissing conspiracy to monopolize claim because "Complaint fails to allege a conspiracy-under both Sections 1 and 2"), *aff'd*, 391 F. App'x 59 (2d Cir. 2010); *Credit Chequers Info. Servs., Inc. v. CBA, Inc.,* No. 98 Civ. 3868, 1999 WL 253600, at *12 (S.D.N.Y. Apr. 29, 1999) (dismissing conspiracy to monopolize claims "for the same reason" that the court dismissed the Section 1 claims), *aff'd*, 205 F.3d 1322 (2d Cir. 2000).   None of Plaintiffs' allegations regarding the Aggregators "nudge" any Aggregator's conduct near, let alone over, the line between legitimate business behavior and conspiratorial agreement.  *Twombly,* 550 U.S. at 570.

In addition, Plaintiffs fail to allege specific intent to monopolize on the part of any Aggregator: an essential element of a conspiracy to monopolize claim.  *See Williams v. Citigroup, Inc.*, No. 08 CV 9208, 2009 WL 3682536, at *6 n.3 (S.D.N.Y. Nov. 2, 2009), *aff'd in relevant part*, 433 F. App'x 36 (2d Cir. 2011); *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 405 (S.D.N.Y. 2008).   The Complaint contains no allegations about the "state of

mind" of any Aggregator.  Nor does it allege the type of conduct from which a specific intent to monopolize can be inferred—that is, "conduct that has no legitimate business justification but to destroy or damage competition."  *GTE New Media Servs. v. Ameritech Corp.,* 21 F. Supp. 2d 27, 45 (D.D.C. 1998).  Rather, the Complaint relies solely on conclusory allegations that "Defendants intentionally conspired to monopolize the market for transmission of A2P SMS through the use of exclusionary practices" and that they had the "specific intent" to monopolize the market.  Compl. ¶¶ 144, 150.  Such pleading is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.[5]

## IV.   Plaintiffs Fail To Allege That They Have Standing To Bring Their Antitrust Damages Claims.

Plaintiffs' failure to allege that they purchased any A2P SMS services directly from any of the Aggregators is an independent basis for dismissal of their claims.  Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), only *direct purchaser* plaintiffs have standing to recover damages in private antitrust actions.[6]  Here, Plaintiffs make no such allegations.  Plaintiff Club Texting merely alleges that it "*sent* its A2P SMS *through* one or more of the aggregators named as Defendants in this Complaint," Compl. ¶ 21 (emphasis added), and TextPower and iSpeedbuy similarly concede that they only "*sent* [their] A2P SMS *through* one or more of the aggregators involved in the conspiracy," *id.* ¶¶ 22-23 (emphasis added).  Where, as here, Plaintiffs have not

---

[5] Yet a third and independent basis for dismissing Plaintiffs' conspiracy to monopolize claim is Plaintiffs' failure to allege that the Aggregators intended to confer monopoly power on any single entity.  Plaintiffs instead seek to utilize a shared monopoly theory, a concept rejected by the Second Circuit.  *See RxUSA Wholesale, Inc.*, 661 F. Supp. 2d at 235.

[6] The *Illinois Brick* "indirect purchaser" doctrine only bars antitrust damages actions by indirect purchasers; it does not bar indirect purchaser antitrust claims limited solely to injunctive relief.  *See, e.g., In re Pub. Offering Antitrust Litig.*, No. 98 Civ. 7890, 2004 WL 350696, at *8 (S.D.N.Y. Feb. 25, 2004) (recognizing that "Plaintiffs' 'indirect purchaser' status does not bar Plaintiffs from seeking injunctive relief under Section 16 of the Clayton Act").

alleged facts to establish that they are direct purchasers, they "lack antitrust standing" to bring

suit for damages. *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 291-92 (2d

Cir. 2006); *see also Schwimmer v. Sony Corp. of Am.*, 637 F.2d 41, 47 (2d Cir. 1980)

(recognizing *Illinois Brick* and noting that "it is especially important to have clear standing rules

in order to avoid abuses of the Clayton Act's private enforcement remedy"). To the extent that

Plaintiffs cannot allege that each of them purchased A2P SMS interconnection services directly

from an Aggregator or Carrier Defendant, the antitrust damages claims of these indirect-

purchaser Plaintiffs must be dismissed.

**V.     Plaintiffs' Claims Are Barred By The Statute of Limitations.**

"Any action to enforce a cause of action under [Section 4 of the Clayton Act] shall be

forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C.

§ 15b. An antitrust cause of action accrues when a defendant commits an act that allegedly

injures a plaintiff's business. *Higgins v. New York Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir.

1991); *see also In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 378 (S.D.N.Y. 2002)

("Generally, an antitrust cause of action accrues as soon as a defendant's allegedly unlawful act

causes injury to a plaintiff's business."); *Johnson v. Nyack Hosp.*, 891 F. Supp. 155, 159

(S.D.N.Y. 1995) ("The cause of action accrues when a defendant commits an act that violates the

antitrust laws and injures the plaintiff."), *aff'd*, 86 F.3d 8 (2d Cir. 1996).

**A.     Plaintiffs' Refusal To Deal Claim Is Time-Barred.**

Plaintiffs do not allege that they were first injured by Defendants' alleged refusal to deal

on or after April 5, 2008. Instead, they allege that the CSC system, the basis for their refusal to

deal claim, was implemented in 2003. Compl. ¶¶ 6, 53, 55. Plaintiffs allege that from that time

on, "[t]he Carrier Defendants agreed that they would not honor use of ten-digit telephone

numbers . . . . Instead businesses would be forced into a privately-administered system using the

new five digit (later also six-digit) CSCs." *Id*. at ¶¶ 53, 55.  Where an initial refusal to deal is

final, reaffirmations of that refusal do not constitute separate overt acts that would begin a new

limitations period. *See Vitale v. Marlborough Gallery*, No. 93 Civ. 6276, 1994 WL 654494, at

*5 (S.D.N.Y. July 5, 1994) (if initial refusal to deal is final, statute begins to run then and does

not restart when plaintiff makes subsequent unsuccessful efforts to deal with defendant).

Plaintiffs do not allege that Defendants' initial refusal to allow Plaintiffs to use ten-digit numbers

to send A2P SMS occurred on or after April 5, 2008.  They, therefore, have alleged no refusal to

deal claim that accrued within the four year statute of limitations period, and the claim is time-

barred. *See Tese-Milner v. Diamond Trading Co.*, No. 04 Civ. 5203, 2011 WL 4501336, at *6

(S.D.N.Y. Sept. 29, 2011) (citing *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938

(9th Cir. 1981) (statute of limitations starts to run at the initial refusal to sell).

### B.      Plaintiffs' Price-Fixing Claim Is Time-Barred.

Plaintiffs seek to assert claims on behalf of A2P providers that leased CSCs at

anticompetitive prices on or after April 5, 2008.  Plaintiffs do not allege, however, that any

agreements upon which they paid such anticompetitive prices were entered into on or after April

5, 2008.  Compl. ¶ 14.  The only date specified in the Complaint is 2003, when the CSC system

was created.  *Id.* ¶¶ 6, 53, 55, 131, 132.  Where the anticompetitive price is based on an

agreement entered in the pre-limitations period, the statute of limitations bars claims for resulting

antitrust injury occurring within the limitations period.  That is because such injury results from

the single and initial injurious act of entering into the anticompetitive agreement.  *See Buspirone*,

185 F. Supp. 2d at 379 (payments contemplated by the challenged agreement "are mere

consequences of the original Agreement and do not restart the statute of limitations"); *In re

Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003)

(payments contemplated by the challenged agreement "are not sufficient to extend or restart the

limitations period because the performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act"); *Sapienza v. Osleeb*, 550 F. Supp. 1304, 1309 (E.D.N.Y. 1982) (antitrust claims challenging contract provisions time-barred because, although injury allegedly continued into the limitations period, "the only illegal conduct pleaded in the complaint" was "entering into the allegedly unlawful agreement" and a related assignment agreement, both of which occurred more than four years before plaintiffs filed their lawsuit); *Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F. Supp. 218, 221 (S.D.N.Y. 1979) (antitrust claims challenging agreement between plaintiff's customer and supplier were time-barred because, although lost business from the customer occurred in the limitations period, "all of the injury to plaintiff was caused by [pre-limitations period] agreement," which was executed and known to plaintiff more than four years before the lawsuit was filed), *aff'd*, 614 F.2d 1293 (2d Cir. 1979).  Plaintiffs' price-fixing cause of action is, therefore, time-barred.

     **C.**    **Plaintiffs' Conspiracy To Monopolize Claim Is Time-Barred.**

Plaintiffs' conspiracy to monopolize claim simply restates the allegations asserted in support of Plaintiffs' refusal to deal and price-fixing claims.  *Compare* Compl. ¶¶ 122, 124, 126, 131, 133-34 *with id.* ¶¶ 145, 147-49.  The claim is time-barred for the same reasons discussed above.

## CONCLUSION

For the reasons stated above, the Aggregators respectively ask this Court to dismiss all claims against them with prejudice.

Dated: August 14, 2012                  Respectfully submitted,

                                      /s/ Sanket J. Bulsara               `
                                Molly S. Boast (MSB2350)
                                Sanket J. Bulsara (SJB0679)

Christina Z. Milnor (*admitted pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
Email: molly.boast@wilmerhale.com,
sanket.bulsara@wilmerhale.com,
christina.milnor@wilmerhale.com

*Counsel for OpenMarket Inc.*

  /s/ Patrick J. Pascarella _____
Patrick J. Pascarella (*admitted pro hac vice*)
Dylan M. Carson (*admitted pro hac vice*)
Tucker Ellis LLP
925 Euclid Avenue, Suite 1150
Cleveland, Ohio 44115
Telephone:  (216) 696-4936
Facsimile: (216) 592-5009
Email: pat.pascarella@tuckerellis.com,
dylan.carson@tuckerellis.com

Steven A. Reiss (SR5889)
Adam C. Hemlock (AH6610)
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310 8174
Facsimile: (212) 310-8007
Email: steven.reiss@weil.com,
adam.hemlock@weil.com

*Counsel for Ericsson Inc., d/b/a Ericsson IPX*

  /s/ Paolo Morante _____
Paolo Morante (PM1017)
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: paolo.morante@dlapiper.com

*Counsel for Defendant Air2Web, Inc.*

  /s/ Robert L. Sills _____

20

Robert L. Sills (RS8896)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5110
Facsimile: (212) 506-5151
Email: rsills@orrick.com

David F. Smutny (*admitted pro hac vice*)
Jeffrey Prokop (JP8155)
Ross Paolino (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8562
Facsimile: (202) 339-8500
Email: dsmutny@orrick.com,
jprokop@orrick.com, rpaolino@orrick.com

*Counsel for mBlox Incorporated*

  /s/ David I. Gelfand_____
David I. Gelfand *(admitted pro hac vice)*
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone: (202) 974-1690
Facsimile: (202) 974-1999
Email: dgelfand@cgsh.com

*Counsel for Sybase, Inc.*

  /s/ Jennifer Stewart_____
Jennifer Stewart (*admitted pro hac vice*)
Cooley LLP
500 Boylston Street
Boston, MA  02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
Email: jstewart@cooley.com

Jonathan Bach  (JPB9710)
Ian Shapiro (IS5120)
Cooley LLP
1114 Avenue of the Americas

New York, NY 10036-7798
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: jbach@cooley.com,
ishapiro@cooley.com

*Counsel for SoundBite Communications,
Inc.*

  /s/ Karl Geercken _____
Karl Geercken (KG5897)
90 Park Ave.
Alston & Bird LLP
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: karl.geercken@alston.com

Peter Kontio (*admitted pro hac vice*)
Mark A. McCarty (*admitted pro hac vice*)
Alston & Bird LLP
1201 West Peachtree St.
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: peter.kontio@alston.com,
mark.mccarty@alston.com

*Counsel for Syniverse Technologies LLC,
f/k/a Syniverse Technologies, Inc.*

  /s/ Basileios Katris _____
Basileios Katris (*admitted pro hac vice*)
Horwood Marcus & Berk Chartered
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
Telephone: (312) 606-3221
Facsimile: (312) 606-3232
Email: bkatris@hmblaw.com

*Counsel for Vibes Media, LLC*

  /s/ Thomas E. Bezanson _____
Thomas E. Bezanson
Karen H. Bromberg
Nathaniel P.T. Read

Cohen & Gresser LLP
800 Third Avenue
New York, New York
Telephone: (212) 957-7604
Facsimile: (212) 957-4514
Email: kbromberg@cohengresser.com,
nread@cohengresser.com,
tbezanson@cohengresser.com

*Counsel for 3Cinteractive, LLC*

23