## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE A2P SMS ANTITRUST LITIGATION | MASTER FILE:  12 CV 2656 (AJN) |
| THIS DOCUMENT RELATES TO: All actions | |

## U.S. CELLULAR CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

ANDERSON KILL & OLICK, P.C.
Lawrence Kill
Carrie Maylor DiCanio
1251 Avenue of the Americas
New York, New York 10020
(212) 278-1000

Attorneys for Defendant
U.S. Cellular Corporation

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ............................................................................................2

      I.      The Parties and Allegations ...............................................................2

      II.     U.S. Cellular Has No Business Activity In the State of New York........................3

ARGUMENT .............................................................................................................5

      I.      Plaintiffs have Not Met Their burden of establishing Personal Jurisdiction ...........5

      II.     There Is No Statutory Basis For Personal Jurisdiction Over U.S. Cellular .............6

            A.     The Clayton Act Does Not Provide For Personal Jurisdiction Over U.S. Cellular.................................................................................................6

            B.     The New York Long-Arm Statute Does Not Provide For General or Specific Personal Jurisdiction Over U.S. Cellular.......................................7

            C.     Jurisdiction Over U.S. Cellular Cannot Be Based On The Actions Of Alleged Co-Conspirators .......................................................................13

      III.    The exercise of personal jurisdiction over U.S. Cellular violates due process......14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access Telecomm., Inc. v. MCI Telcomms. Corp.,*
   197 F.3d 694 (5th Cir. 1999) ........................................................................9

*Attachmate Corp. v. Celcom Axiata Berhad,*
   No. C10-0526-RSM, 2010 U.S. Dist. LEXIS 123501, 2010 WL 4856793 (W.D.
   Wash. Nov. 22, 2010) ...................................................................................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
   171 F.3d 779 (2d Cir. 1999)........................................................................11

*Bensusan Rest. Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997)..........................................................................11

*Burger King Corp v. Rudzewicz,*
   471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)............................10

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985).....................................................................................14

*City of New York v. Cyco.Net, Inc.,*
   383 F. Supp. 2d 526 (S.D.N.Y. 2005)........................................................11

*Cmty. Voice Line, L.L.C. v. MetroPCS Communs., Inc.,*
   No. C 11-4019-MWB, 2011 U.S. Dist. LEXIS 19350 (N.D. Iowa Feb. 25, 2011)...................8

*Daniel v. Am. Bd. of Emergency Med.,*
   428 F.3d 408 (2d Cir. 2005)...................................................................1, 6, 7

*Freeplay Music, Inc. v. Cox Radio, Inc.,*
   No. 04-cv-5238, 2005 WL 1500896 (S.D.N.Y. June 23, 2005) ....................5

*Gen. Elec. Co. v. Bucyrus-Erie Co.,*
   550 F. Supp. 1037 (S.D.N.Y. 1982).............................................................7

*Ginsberg v. Gov't Props. Trust, Inc.,*
   No. 07 CIV. 365 CSHECF, 2007 WL 2981683 (S.D.N.Y. Oct. 11, 2007) ...............8

*Golden Archer Investments, LLC v. Skynet Fin. Sys.,*
   No. 11 CIV. 3673 RJS, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ...................14, 15

*Grove Press, Inc. v. Angleton,*
   649 F.2d 121 (2d Cir. 1981).........................................................................11

ii

*Gundlach v. Int'l Bus. Machines Corp.*,
   No. 11-CV-846 CS, 2012 WL 1520919 (S.D.N.Y. May 1, 2012) ........................7, 8

*Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*,
   No. 06 CIV. 0615 (BSJ), 2007 WL 1732435 (S.D.N.Y. June 14, 2007)..................5

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ..................................................................................9

*Lehigh Val. Indus., Inc. v. Birenbaum*,
   527 F.2d 87 (2d Cir. 1975).............................................................................12, 13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)...................................................................................5

*Marvel Worldwide, Inc. v. Kirby*,
   No. 10 CIV. 141 CM/KNF, 2010 WL 1655253 (S.D.N.Y. Apr. 14, 2010) .............5

*Merkel Associates, Inc. v. Bellofram Corp.*,
   437 F. Supp. 612 (W.D.N.Y. 1977) ......................................................................13

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
   No. 10-CV-1777 ADS AKT, 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) .........5, 12

*New Comm Wireless v. SprintCom, Inc.*,
   213 F. Supp. 2d 61 (D.P.R. 2002).........................................................................9

*Penguin Group (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010).....................................................................................5

*Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998)..............................................................................9

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*,
   No. 03CIV3120, 2006 WL 2034663 (S.D.N.Y. July 19, 2006) .............................13

*Semi Conductor Materials, Inc. v. Citibank Int'l PLC*,
   969 F. Supp. 243 (S.D.N.Y. 1997) .......................................................................10

*SIAI Ins. Co. (RRG) Ltd. v. AON Risk Servs.*,
   2003 U.S. Dist. LEXIS 25581 (N.D. Tex. 2003)....................................................10

*Tech. Patents, L.L.C. v. Deutsche Telekom AG*,
   573 F. Supp. 2d 903 (D. Md. 2008)........................................................................9

*Thomas v. Centennial Communs. Corp.*,
   No. 3:05CV495, 2006 U.S. Dist. LEXIS 92555, 2006 WL 6151153 (W.D.N.C. Dec.
   20, 2006) ...............................................................................................................9

iii

*Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC,*
  No. 09 CIV. 10343 WHP, 2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010) ................................10

## STATUTES

15 U.S.C. § 22 ...............................................................................................................1, 6

47 U.S.C. § 301 ...................................................................................................................3

N.Y. C.P.L.R. § 301 ........................................................................................................1, 7

N.Y. C.P.L.R. § 302 .................................................................................................. passim

## OTHER AUTHORITIES

3 A.L.R. Fed. 120 ..............................................................................................................13

47 C.F.R. § 22.3 ..................................................................................................................8

Fed. R. Civ. P. 4(k)(1) ........................................................................................................5

Fed. R. Civ. P. 12(b)(2) .......................................................................................................1

nydocs1-993383.1

Defendant U.S. Cellular Corporation respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Amended Class Action Complaint on grounds that the Court lacks personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2).

## INTRODUCTION

Plaintiffs Club Texting, Inc. ("Club Texting"), TextPower, Inc. ("TextPower"), and iSpeedbuy LLC ("iSpeedbuy") (collectively "plaintiffs") filed these antitrust lawsuits against sixteen defendants, including U.S. Cellular Corporation ("U.S. Cellular").[1]  U.S. Cellular is a regional wireless communications service provider that does not conduct business in the state of New York, has not otherwise made itself subject to personal jurisdiction in the New York courts, and therefore the claims against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

Neither the Clayton Act's jurisdictional provision nor the New York long arm statute provide a basis to exercise personal jurisdiction over U.S. Cellular.  The Second Circuit has interpreted Section 12 of the Clayton Act as providing for personal jurisdiction over a defendant where that Section's venue clause has been satisfied. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) ("[T]he plain language of Section 12 indicates that its service of process provision applies (and, therefore, establishes personal jurisdiction) only in cases in which its venue provision is satisfied.").  The venue clause of Section 12 is satisfied when a corporation is sued in a judicial district where it is "an inhabitant," where it "may be found," or where it "transacts business."  15 U.S.C. § 22 (2006).  U.S. Cellular satisfies none of these conditions.

---

[1] The case numbers are 12-cv-2656, 12-cv-2729, and 12-cv-3731.  On June 6, 2012, the Court consolidated "All actions filed in the U.S. District Court for the Southern District of New York alleging the same or similar antitrust violations by carriers and aggregators with respect to A2P SMS charges and practices" and ordered that "The Consolidated Action shall be referenced as *In re A2P SMS Antitrust Litigation*" with Master File No. 12-cv-2656 (AJN).

Further, U.S. Cellular has not had contacts with the state of New York such that it is subject to general or specific jurisdiction under New York's long arm statute. *See* N.Y. C.P.L.R. §§ 301, 302. Indeed, exercising personal jurisdiction over U.S. Cellular would offend traditional notions of due process. For these reasons, plaintiffs' complaint against U.S. Cellular should be dismissed for lack of personal jurisdiction.

**STATEMENT OF FACTS**

**I.     THE PARTIES AND ALLEGATIONS**

Club Texting is a New York corporation with offices in Hoboken, New Jersey. (Dkt. 83 (Consolidated Amended Class Action Complaint) at ¶ 21.) TextPower is a California corporation with its principal place of business in California. (Compl. at ¶ 22.) iSpeedbuy is a Maryland limited liability company with its principal place of business in Maryland. (Compl. at ¶ 23.) U.S. Cellular is incorporated in Delaware with its principal place of business and corporate headquarters in Chicago, Illinois. (Declaration of Stephen P. Fitzell ("Fitzell Decl.") at ¶ 3.) Plaintiffs allege that U.S. Cellular participated in a vast conspiracy "to set up a system in 2003 under which persons transmitting A2P SMS could not use inexpensive ten-digit telephone numbers, but were forced to use 'common short codes' ('CSCs') - five-digit (and later six-digit) numbers - at materially higher lease and transmission charges." (Compl. at ¶ 6.)

Plaintiffs allege the existence of jurisdiction over "each of the defendants" under Section 12 of the Clayton Act ("Section 12") and allege that "each of the Defendants resides, is found, transacts business, or has an agent in this district." (Compl. at ¶ 18.) But plaintiffs provide no factual support for this allegation. Similarly, plaintiffs allege jurisdiction over all defendants under New York's long-arm statute by simply parroting statutory language from N.Y. C.P.L.R. § 302(a) (*see* Compl. at ¶ 19) without any factual allegations that would support personal jurisdiction over U.S. Cellular. As shown below, Section 12 does not provide for jurisdiction

2

over U.S. Cellular because U.S. Cellular does not "transact business" in the Southern District of

New York. As also shown below, jurisdiction over U.S. Cellular cannot be predicated upon the

New York long-arm statute and, indeed, the exercise of jurisdiction over U.S. Cellular under the

circumstances here would not comport with constitutional due process.

## II.     U.S. CELLULAR HAS NO BUSINESS ACTIVITY IN THE STATE OF NEW YORK

As stated, U.S. Cellular is a regional wireless carrier. The wireless business is regulated

by the Federal Communications Commission (the "FCC") (plus state regulatory bodies). A

wireless carrier can only provide service pursuant to a license from the FCC. *See* 47 U.S.C. §

301. An FCC wireless license authorizes service for only the specific geographic area covered

by the license. U.S. Cellular holds no licenses that authorize it to provide service within the

State of New York, and it provides no such service in New York. (Fitzell Decl. ¶¶ 7, 4.)

Accordingly, U.S. Cellular does not maintain any cell towers in the State of New York.

(Fitzell Decl. ¶ 7.) U.S. Cellular manages over 400 retail stores and employs 8,400 sales

associates, but none of the retail stores are located in the State of New York nor are any sales

associates employed in the State of New York. (Fitzell Decl. ¶¶ 5-6.) U.S. Cellular does not

have any offices or own any real property in the State of New York. (Fitzell Decl. ¶ 5.) U.S.

Cellular does not have any bank accounts or maintain a telephone listing in the State of New

York. (*Id.*) U.S. Cellular does not have an agent for service of process in the State of New

York. (*Id.*)

U.S. Cellular has indirect investments via stock ownership in two entities that are

partners in general partnerships that own FCC licenses for two markets in the State of New York,

3

denominated by the FCC as New York RSA Nos. 1 and 2.[2]  (Fitzell Decl. ¶ 8.)  The wireless

business for these two markets is managed by Verizon Wireless and branded as Verizon Wireless

service.  (*Id.*)  The diagrams shown in Paragraphs 9 and 10 of Mr. Fitzell's Declaration identify

how these investments are held.

U.S. Cellular does not solicit business in the State of New York.  (Fitzell Decl. ¶ 11.)

U.S. Cellular's advertising is directed to consumers in the markets where it has operations, none

of which are in the State of New York.  (*Id.*)  U.S. Cellular offers its service over its website.

However, in order to obtain service in that fashion, one must first provide a billing zip code that

is within a U.S. Cellular service area.  Providing a zip code within an area for which U.S.

Cellular does not provide service—including the State of New York— results in the following

message: "We're sorry but we do not offer our products & services in this area.  Please enter a

different zip code or search by city/state."  (Fitzell Decl. ¶ 12.)

Of U.S. Cellular's approximately 6,000,000 total customers, approximately 400 have

billing addresses in New York.  (Fitzell Decl. ¶ 13.)  These New York customers amount to less

than 0.01% of U.S. Cellular's total customers.  (*Id.*)  U.S. Cellular did not solicit or sign up such

customers in New York.  (Fitzell Decl. ¶¶ 11-12.)  These customers likely signed up for service

in a neighboring state or some other U.S. Cellular store and relocated to New York since U.S.

Cellular does not (a) market its service to customers in the State of New York, (b) provide

wireless service within the State of New York (and indeed it cannot provide wireless service

within New York), and (c) has no operations within the State.

Like all other carriers, U.S. Cellular has roaming agreements with third party carriers to

provide service to U.S. Cellular's customers on those other carriers' networks when U.S.

---

[2] The St. Lawrence Seaway RSA Cellular Partnership is a licensee for New York RSA No. 1.  New York RSA 2 Cellular Partnership is a licensee for New York RSA No. 2.  (Fitzell Decl. ¶¶ 9-10.)

Cellular customers are physically present—i.e., "roaming"—outside of U.S. Cellular's service areas. Such is the case for U.S. Cellular customers roaming in the State of New York. As shown below, however, courts have consistently rejected this kind of "contact" as being meaningful for personal jurisdiction purposes.

## ARGUMENT

## I. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). The exercise of personal jurisdiction by a federal court requires (1) a statutory basis for personal jurisdiction and (2) that the exercise of personal jurisdiction comports with constitutional due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). A plaintiff may establish a statutory basis for personal jurisdiction (1) pursuant to the long-arm statute of the state in which the district court is located or (2) as specifically authorized by a federal statute. *See* Fed. R. Civ. P. 4(k)(1).

In this case, plaintiffs invoke the Clayton Act and New York's long-arm statute without alleging any supporting facts. However, "[m]ere conclusory allegations are insufficient to support a *prima facie* showing of personal jurisdiction." *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 CIV. 0615 (BSJ), 2007 WL 1732435, at *3 (S.D.N.Y. June 14, 2007) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)); *Marvel Worldwide, Inc. v. Kirby*, No. 10 CIV. 141 CM/KNF, 2010 WL 1655253, at *3 (S.D.N.Y. Apr. 14, 2010) ("[C]onclusory allegations are not enough to establish personal jurisdiction.") (citation omitted); *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04-cv-5238, 2005 WL 1500896, at *1 (S.D.N.Y. June 23, 2005) (granting motion to dismiss for lack of personal jurisdiction and denying

5

jurisdictional discovery where defendant argued that plaintiff's "conclusory allegations merely parrot the relevant statutory language, and that the actual facts alleged in the complaint are facially insufficient to support jurisdiction."); *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 ADS AKT, 2011 WL 381612, at *7 (E.D.N.Y. Feb. 2, 2011) (granting motion to dismiss for lack of personal jurisdiction and denying a request for jurisdictional discovery where the plaintiff "primarily relie[d] on the recitation of the long-arm statute in the complaint"). Accordingly, plaintiffs have failed to carry their burden to allege either a statutory basis for the exercise of jurisdiction over U.S. Cellular or that such an exercise would comport with due process.

## II.     THERE IS NO STATUTORY BASIS FOR PERSONAL JURISDICTION OVER U.S. CELLULAR

### A.     The Clayton Act Does Not Provide For Personal Jurisdiction Over U.S. Cellular

The Clayton Act does not provide a statutory basis to exercise jurisdiction over U.S. Cellular because U.S. Cellular does not "transact business" within the judicial district.  Section 12 of the Clayton Act provides for venue and service of process in antitrust cases.  That section provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (2006). The Second Circuit has interpreted the service of process clause of Section 12 as providing for personal jurisdiction only where Section 12's venue clause is satisfied: "[T]he plain language of Section 12 indicates that its service of process provision applies (and, therefore, establishes personal jurisdiction) only in cases in which its venue

6

provision is satisfied." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005).

U.S. Cellular is not an inhabitant of and is not found in the Southern District of New York.[3]  (*See*

Fitzell Decl. ¶¶ 3-13.)  Thus, Section 12's venue provision will only be satisfied if U.S. Cellular

"transacts business" in the judicial district.  "The Supreme Court has construed the phrase

'transacts business,' as used in the venue provision of Clayton Act Section 12, to refer to 'the

practical, everyday business or commercial concept of doing business or carrying on business of

any substantial character.'"  *Daniel*, 428 F.3d at 428 (quoting *United States v. Scophony Corp. of

Am.*, 68 S. Ct. 855, 862 (1948)).

In this case, U.S. Cellular does not itself provide wireless service in the State of New

York, and it has no retail stores, offices, employees, bank accounts, or even a telephone number

in the state. (Fitzell Decl. ¶¶ 4-5.)  U.S. Cellular does not solicit any business in the State of

New York. (Fitzell Decl. ¶ 11.)  Accordingly, Section 12 of the Clayton Act does not provide a

statutory basis to exercise personal jurisdiction over U.S. Cellular.

## B.     The New York Long-Arm Statute Does Not Provide For General or Specific Personal Jurisdiction Over U.S. Cellular

Neither New York's general jurisdiction long-arm statute, C.P.L.R. § 301, nor the

specific jurisdiction provisions of C.P.L.R. § 302(a), provide for personal jurisdiction over U.S.

Cellular in this case.

### 1.     General Jurisdiction Does Not Exist Under § 301.

"Under the New York long-arm statute, general jurisdiction exists over non-residents

'doing business' in New York." *Gundlach v. Int'l Bus. Machines Corp.*, No. 11-CV-846 CS,

2012 WL 1520919, at *8 (S.D.N.Y. May 1, 2012) (citing N.Y. C.P.L.R. § 301) (internal

---

[3] "Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction. Being 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982) (internal citations omitted).

7

quotation and citation omitted).  This Court recently described when a defendant is "doing business" in New York:

> The Court may exercise jurisdiction over an out-of-state defendant if the defendant engages in continuous and systematic business activities within New York, or in other words, does business with a fair measure of permanence and continuity. This standard is stringent and, at its core, boils down to presence. Factors that courts consider in determining a defendant's presence in the state include: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state.

*Id.* (internal quotations and citations omitted).  As discussed above, U.S. Cellular does not engage in continuous and systematic business activities in New York.  Indeed, U.S. Cellular satisfies none of the factors discussed by the Court in *Gundlach.*

The fact that U.S. Cellular holds indirect interests—via stock ownership—in two companies that are partners in general partnerships that own FCC licenses covering areas of New York does not mean U.S. Cellular has transacted, or is doing, business in New York.  Indeed, even the actual presence of such companies in New York would not subject U.S. Cellular to personal jurisdiction.  *Ginsberg v. Gov't Props. Trust, Inc.*, No. 07 CIV. 365 CSHECF, 2007 WL 2981683, at *7 (S.D.N.Y. Oct. 11, 2007) ("[I]it is well settled that the mere presence of a parent's subsidiary in New York does not subject the parent to personal jurisdiction in the state.").

Nor does the existence of roaming agreements do anything to create personal jurisdiction over U.S. Cellular.  Roaming agreements enable third party carriers to provide service to U.S. Cellular's customers as they travel outside of U.S. Cellular's service area.  It is beyond dispute that U.S. Cellular is prohibited by federal law from providing service in New York.  47 C.F.R. § 22.3; Fitzell Decl. ¶ 7.  And every decision located by U.S. Cellular's counsel that has addressed the question of whether roaming agreements are sufficient to confer jurisdiction has decided that

8

they are not. *Cmty. Voice Line, L.L.C. v. MetroPCS Commc'ns, Inc.*, No. C 11-4019-MWB, 2011 U.S. Dist. LEXIS 19350, at *5-6 (N.D. Iowa Feb. 25, 2011) (collecting cases and recognizing that "every court to consider the question has held that 'roaming' agreements are not sufficient to establish personal jurisdiction over a cellular service provider"); *Attachmate Corp. v. Celcom Axiata Berhad*, No. C10-0526-RSM, 2010 U.S. Dist. LEXIS 123501, 2010 WL 4856793, at *3 (W.D. Wash. Nov. 22, 2010) (finding no jurisdiction based on roaming agreements); *Tech. Patents, L.L.C. v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 914-15 & n.14 (D. Md. 2008) (same); *Thomas v. Centennial Commc'ns Corp.*, No. 3:05CV495, 2006 U.S. Dist. LEXIS 92555, 2006 WL 6151153, at *3 (W.D.N.C. Dec. 20, 2006) (same); *cf. New Comm Wireless v. SprintCom, Inc.*, 213 F. Supp. 2d 61, 69-70 (D.P.R. 2002) (where disregard for roaming agreement was basis for specific jurisdiction).

The unifying theme of these cases is that "'doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state].'" *Tech. Patents*, 573 F. Supp. 2d at 914-15 (citation omitted); *accord Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008) ("It is not enough that a corporation do business *with* Texas.") (emphasis in original); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("telecommunications companies do business with each other…, but neither is doing business in the other [forum] for jurisdictional purposes"). U.S. Cellular's roaming agreements, accordingly, do not subject U.S. Cellular to personal jurisdiction New York.

9

Finally, the mere fact that an extremely small number of U.S. Cellular customers currently have billing addresses within New York does not subject U.S. Cellular to personal jurisdiction in this District. As explained above, U.S. Cellular does not and cannot provide wireless service to this handful of customers while they are in New York. (Fitzell Decl. ¶¶ 4, 7.) For jurisdiction to exist, U.S. Cellular must have "purposefully" directed its activities towards the State. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 473-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (The "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum[.]"). Given that U.S. Cellular maintains no stores or employees in the State, does not have the necessary FCC license to provide service in the State, and does not advertise in the State, it is clear that U.S. Cellular has not purposely directed its business activities at residents of New York. Although a few hundred persons residing in New York are U.S. Cellular customers, they did not initially obtain service from U.S. Cellular's website or from any retail outlet within New York. Sending bills to a few hundred customers within the State is insufficient because acceptance of payment from a resident of a state is not enough to establish jurisdiction. *See Semi Conductor Materials, Inc. v. Citibank Int'l PLC*, 969 F. Supp. 243, 246 (S.D.N.Y. 1997) (holding defendant did not transact business in New York where "defendant sent several faxes to plaintiff in New York and because defendant accepted the payment of plaintiff's confirmation fee under the letter of credit in its New York bank account"); *SIAI Ins. Co. (RRG) Ltd. v. AON Risk Servs.*, No. 3:03-CV-1432-K, 2003 U.S. Dist. LEXIS 25581, at *14-*15 (N.D. Tex. Dec. 19, 2003) ("[A] nonresident defendant does not conduct continuous and systematic activity in the forum state by merely seeking payment from persons in the forum state.").

### 2. Specific Jurisdiction Does Not Exist Under § 302(a)(1).

"To establish jurisdiction under C.P.L.R. § 302(a)(1), a plaintiff must show that the defendant transacts business in New York and that the 'claim arises from those business transactions.'" *Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*, No. 09 CIV. 10343 WHP, 2010 WL 4739938, at \*5 (S.D.N.Y. Nov. 5, 2010) (quoting *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir. 2004)). As explained above with respect to the Clayton Act's jurisdictional provision, U.S. Cellular does not transact business in New York. *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 542 (S.D.N.Y. 2005) ("[T]he test for transacting business for venue purposes under the antitrust laws is co-extensive with the test for jurisdiction under New York CPLR § 302.") (quoting *Agra Chem. Distrib. Co., Inc. v. Marion Labs, Inc.*, 523 F.Supp. 699, 702 (W.D.N.Y. 1981)). Accordingly, there is no jurisdiction over U.S. Cellular under C.P.L.R. § 302(a)(1).

### 3. Specific Jurisdiction Does Not Exist Under § 302(a)(2).

To establish personal jurisdiction under § 302(a)(2), plaintiffs must show that U.S. Cellular "commit[ed] a tortious act within the state" and that plaintiffs' claim arises from that tortious act. However, U.S. Cellular has not committed any tortious act within the State of New York. Indeed, plaintiffs have failed to allege that U.S. Cellular has committed *any* specific acts within New York—tortious or otherwise.

While antitrust violations are considered tortious acts for purposes of § 302(a), *Grove Press, Inc.* v. *Angleton,* 649 F.2d 121, 123 (2d Cir. 1981), § 302(a)(2) requires that the defendant's act or omission to have occurred within New York. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789-90 (2d Cir. 1999). And this necessarily requires that the defendant or its agent be "physically present" in New York to commit the complained of tort. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) ("To subject

11

non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort

while he or she is physically in New York State.") (quoting *Carlson v. Cuevas,* 932 F.Supp. 76,

80 (S.D.N.Y. 1996)).  Here, plaintiffs do not allege that U.S. Cellular or any of U.S. Cellular's

agents were ever physically present in New York.  Accordingly, Section 302(a)(2) cannot

support jurisdiction over U.S. Cellular.

### 4.      Specific Jurisdiction Does Not Exist Under § 302(a)(3).

To establish personal jurisdiction under § 302(a)(3), plaintiffs must show that (1) U.S.

Cellular or its agent committed a tortious act outside the state which caused injury to person or

property within the state and either (2) that U.S. Cellular

> (i) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have
> consequences in the state and derives substantial revenue from
> interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3).  The Second Circuit holds that "the injury in New York must be

direct and not remote or consequential. . . . section 302(a)(3) is not satisfied by remote or

consequential injuries such as lost commercial profits which occur in New York only because the

plaintiff is domiciled or doing business here." *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d

87, 94 (2d Cir. 1975).  In this case, plaintiffs have not alleged any specific tortious actions by

U.S. Cellular outside of New York that are alleged to have caused injury within the State.

Regardless, the second statutory requirement is also unmet because U.S. Cellular does not solicit

business, engage in any persistent course of conduct, or derive substantial revenue from services

rendered in New York.

Moreover, plaintiffs have failed to allege any facts from which the Court can conclude

that U.S. Cellular should have reasonably expected any allegedly tortious act to have

consequences in New York.  Although plaintiffs have parroted the language of § 302(a)(3), such

a naked recitation is insufficient to meet plaintiffs' burden of establishing jurisdiction.  *See*

*Nationwide Mut. Ins. Co.*, 2011 WL 381612 at \*7  (granting motion to dismiss for lack of

personal jurisdiction and denying a request for jurisdictional discovery where the plaintiff

"primarily relie[d] on the recitation of the long-arm statute in the complaint"); *Merkel*

*Associates, Inc. v. Bellofram Corp.*, 437 F. Supp. 612, 616 (W.D.N.Y. 1977) (holding that

"[g]enerally, plaintiffs' complaint does not allege with any particularity facts which would

support personal jurisdiction" and noting that "plaintiffs have frequently used the collective term

'defendants' in the complaint, even where the term was inappropriate").

## C.    Jurisdiction Over U.S. Cellular Cannot Be Based On The Actions Of Alleged Co-Conspirators

U.S. Cellular is not an agent of the other defendants in this case by virtue of plaintiffs'

conspiracy allegations.  The argument for  a "co-conspiracy doctrine" of jurisdiction under which

a foreign corporation is deemed the agent of a co-conspirator who is transacting business within

the judicial district has been rejected by most courts and, most importantly, by the Second

Circuit.  *Lehigh Val. Indus.*, 527 F.2d at 93-94 and n.6  ("The New York law seems to be clear

that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the

purposes of section 302(a)(2). . . . In antitrust cases it is well established that the mere presence

of one co-conspirator within the jurisdiction does not render alleged co-conspirators outside the

jurisdiction amenable to process."); *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No.

03CIV3120, 2006 WL 2034663, at \*8 (S.D.N.Y. July 19, 2006) ("[I]n general 'the rule in this

circuit is that the mere presence of one conspirator ... does not confer personal jurisdiction over

another alleged conspirator.'") (quoting *Leasco Data Processing Equip, Corp. v. Maxwell,* 468

F.2d 1326, 1343 (2d Cir. 1972)); 3 A.L.R. Fed. 120 ("This doctrine has generally been rejected,

13

the courts holding that the mere allegation of participation in a coconspiracy with local corporations is insufficient to establish that the foreign corporation is transacting business within the district.").

## III.    THE EXERCISE OF PERSONAL JURISDICTION OVER U.S. CELLULAR VIOLATES DUE PROCESS

In addition to establishing a statutory basis for jurisdiction, "a plaintiff must also show that the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Golden Archer Inv., LLC v. Skynet Fin. Sys.*, No. 11 CIV. 3673 RJS, 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012). In New York, courts break the due process inquiry into two related parts: a "minimum contacts" inquiry and a "reasonableness" inquiry. *Id.* In order to establish minimum contacts, "the plaintiff must show that his claim arises out of or relates to defendant's contacts with the forum state, that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." *Id.* (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)). These "minimum contacts" cannot be random, fortuitous, or attenuated, but must be the result of defendant's purposeful action directed towards the forum, such that defendant has sought the forum's benefits and protections. *Burger King*, 471 U.S. at 472-76.

If minimum contacts exist, the reasonableness inquiry asks the court to "ensure that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Golden Archer*, 2012 WL 123989 at *5 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). And courts focus on five factors in making this determination: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiffs interest in obtaining convenient and effective relief; (4)

14

the interstate judicial system's interest in obtaining the most efficient resolution of the

controversy; and (5) the shared interest of the states in furthering substantive social policies."

*Golden Archer*, 2012 WL 123989 at \*6 (quoting *Chloe v. Queen Bee of Beverly Hills, LLC,* 616

F.3d 158, 164 (2d Cir. 2010)).

 Plaintiffs cannot show that their claim arises out of or relates to U.S. Cellular's contacts

with New York.  Indeed, plaintiffs have failed to allege ***any*** contact by U.S. Cellular with the

State of New York—related to the alleged conspiracy or otherwise.  And as explained above,

U.S. Cellular has not purposefully availed itself of doing business in New York such that it could

foresee being haled into court there.  In fact, U.S. Cellular does not do business in New York at

all:  it does not provide wireless services, maintain cell towers, retail stores, offices, employees,

bank accounts, or telephone numbers in New York.  U.S. Cellular does not solicit any business in

the State and does not derive revenue from New York such that it could foresee being sued in

New York.

 Moreover, the exercise of jurisdiction over U.S. Cellular fails the reasonableness inquiry.

Holding a trial in the Southern District of New York would significantly burden U.S. Cellular

because it is not located within the District.  (Fitzell Decl. ¶¶ 3-6.)  Since none of U.S. Cellular's

employees or business operations are located within the District, it is axiomatic that its witnesses

and documentary evidence are all located outside the District.  For example, the following

individuals are likely to have information on U.S. Cellular's short codes practices, relationship

with aggregators, and CTIA are each located in Chicago, Illinois:

- Matthew Davidson, Product Manager, responsible for Premium Messaging and short codes
- Ronald Heron, Senior Manager, Product Management, works with CTIA on short and long codes issues
- Lindsay Gilbertson, Vendor Partner Manager, responsible for relationship with aggregators

15

- <u>Leslie Bleke</u>, Senior Manager Vendor Management, former Vendor Partner Manager responsible for relationship with aggregators
- <u>Ryan Martin</u>, Field Marketing Manager, former Product Manager for Premium Messaging and short codes
- <u>Rick Strokes</u>, Device Marketing Manager, former Product Manager for Premium Messaging and short codes

Finally, the interest of New York in adjudicating this dispute is not compelling.  Plaintiffs seek to bring this suit on behalf of a class of common short code lessees which are located throughout the country.  Plaintiffs have not alleged that any significant portion of these short codes lessees reside in New York.  And the alleged conspiracy involves at least seventeen co-conspirators, none of which are incorporated in New York.

## **CONCLUSION**

For the foregoing reasons, the Court should grant U.S. Cellular Corporation's Motion To Dismiss For Lack Of Personal Jurisdiction.

Dated: August 14, 2012

Respectfully submitted,

Lawrence Kill
Carrie Maylor DiCanio
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  (212)-278-1722
Facsimile:  (212)-278-1733
E-Mail:  lkill@andersonkill.com

*Attorneys for Defendant U.S.
Cellular Corporation*

16