UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re A2P SMS ANTITRUST LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO:   ) ALL ACTIONS ) ) ) ) | Master File: 12 CV 2656 (AJN)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF AGGREGATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I. *Twombly* Requires That A Complaint Contain Sufficient Allegations To Render a Defendant's Alleged Participation In A Conspiracy Plausible.............................................2

II. Plaintiffs' Allegations Against The Aggregators Fail To Satisfy *Twombly* ........................4

III. The Statute Of Limitations Bars All Of Plaintiffs' Claims..................................................8

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

*Allen v. Dairy Farmers of Am. Inc.*,
    748 F. Supp. 2d 323 (D. Vt. 2010) ............................................................................... 9

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012 ....................................................................................... 2, 3

*Harris v. New York State Dep't of Health*,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002) .......................................................................... 6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG) (VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ........ 4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG) (VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009) ........ 4

*In re Fasteners Antitrust Litig.*,
    No. 08-MD-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) ......................... 2, 3, 4

*In re Microsoft Corp. Antitrust Litig.*,
    168 F. Supp. 2d 541 (D. Md. 2001) .............................................................................. 6

*Kasada, Inc. v. Access Capital, Inc.*,
    No. 01 Civ. 8893 (GDB), 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004) ................... 7

*Michelman v. Clark-Schwebel Fiber Glass Corp.*,
    534 F.2d 1036 (2d Cir. 1976) ....................................................................................... 7

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007) ......................................................................................... 2

*Rite Aid Corp v. AmEx Travel Rel. Serv. Co.*,
    708 F. Supp. 2d 257 (E.D.N.Y. 2010) ......................................................................... 9

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ......................................................................................... 4

*Vitale v. Marlborough Gallery*,
    No. 93 Civ. 6276 (PKL), 1994 WL 654494 (S.D.N.Y. July 5, 1994) ......................... 9

*Wellnx Life Scis. Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270
    (S.D.N.Y. 2007) ............................................................................................................ 5

## INTRODUCTION

Far from demonstrating that Plaintiffs have pled a plausible antitrust claim against the Aggregators, Plaintiffs' opposition brief reveals how baseless their claim is. Plaintiffs' complaint is fundamentally about the *Carriers'* alleged requirement that A2P messages be transmitted using only five- or six-digit CSCs. Opp'n at 10 ("In the absence of an agreement to prevent the use of competing 10-digit numbers . . . no monopoly rents as alleged in the Complaint would be available."). The Aggregators' role in this business is as service providers who assist companies that wish to send messages to the Carriers' customers. Plaintiffs do not allege that the Aggregators participated in the creation of the CSC system, but rather make several conclusory assertions about aggregators generally—for example, that their fees are "exorbitant"—in the hopes of creating an illusion that they have provided the factual heft required by *Twombly*. Plaintiffs are inviting the Court to open a wide loophole in *Twombly* by requiring an entire group of service providers to go through the enormous burden and expense of antitrust discovery simply because they deal with the Carriers, who are alleged to have created an objectionable set of rules. Yet Plaintiffs cite no case with facts remotely resembling those alleged here.

Rather, Plaintiffs' arguments in opposition to the Aggregators' Motion to Dismiss consist of a rehash of the complaint's inadequate and conclusory allegations, and creative quoting from cases that, when read in their entirety, actually support dismissal of Plaintiffs' complaint against the Aggregators. The Aggregators' Motion to Dismiss should be granted, and Plaintiffs' claims against the Aggregators dismissed with prejudice.

## ARGUMENT

### I. *Twombly* Requires That a Complaint Contain Sufficient Allegations to Render a Defendant's Alleged Participation in a Conspiracy Plausible

There is no disagreement on the standard used in assessing the adequacy of the complaint's allegations. *See* Opp'n at 7-8 (allegations of parallel conduct must be placed in context raising suggestion of preceding agreement, not just parallel conduct); Aggs.' Opening Mem. at 11 (same). Despite Plaintiffs' acknowledgement of the relevant standard, nowhere in their opposition do they point to the facts in the complaint that provide such context. Instead, Plaintiffs summarily conclude, against the backdrop of their clear dislike for the CSC system, *see e.g.,* Opp'n at 2, that the CSC must be founded in an illegal conspiracy which the Aggregators must have joined. *See* Opp'n at 1 (assuming fees associated with A2P SMS transmission are "illegal"); *id.* at 18 (suggesting that Aggregators conspired to monopolize just because they are middlemen between CSC lessees and Carriers); *see also* Compl. at ¶ 112 (assuming, without factual support, that the Aggregators played an "instrumental role in the [assumed] illegal conspiracy."). In so doing, Plaintiffs in their opposition, as in their complaint, simply couch their own legal conclusions as factual allegations. In this Circuit, however, "no effect" is given to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (discussing the standard for assessing a 12(b)(6) motion to dismiss).

Plaintiffs rely on *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012), *pet for cert. filed* Oct. 9, 2012, and *In re Fasteners Antitrust Litigation*, No. 08-md-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011), in their argument that they have met the *Twombly* standard. Neither *Anderson* nor *Fasteners* can salvage Plaintiffs' allegations, or lack thereof, against the Aggregators.

2

In *Anderson*, the plaintiff alleged parallel conduct "that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties," *and* asserted a multitude of specific factual allegations rendering its conspiracy to refuse to deal claim plausible under *Twombly*. 680 F.3d at 187-89. The *Anderson* court identified a list of the plaintiff's allegations regarding specific meetings and conversations, between identified defendants, in which they discussed refusing to deal with or plans to "cut off" the plaintiff. *Id*. Here, with regard to the Aggregators, Plaintiffs fail to allege any parallel conduct that cannot be explained by independent self-interested behavior, or to proffer any factual allegations that would support the inference of a conspiracy, let alone allegations with the specificity and detail of those of the *Anderson* plaintiff.

In *Fasteners,* the defendants argued that the complaint was deficient because it did not allege that "each defendant explicitly colluded with every other defendant." 2011 WL 3563989 at *7. In denying the defendants' motion, the *Fasteners* court—like the *Anderson* court—found that the plaintiffs had alleged parallel conduct contrary to the defendants' unilateral self-interests, *and* provided a laundry list of specific factual assertions in support of the alleged conspiracy. *E.g., id.* at *7 (discussing detailed allegations in the complaint about meetings involving defendants); *id.* at *8 (discussing alleged proposal under which defendants would serve as the "price leader"). The court concluded that the plaintiffs' allegations of parallel conduct inconsistent with unilateral self-interested behavior, combined with the myriad detailed allegations regarding defendants' communications, were sufficient to render their price-fixing claim plausible—even though the plaintiffs had not been able to allege what defendants had argued was the standard: that "all defendants together agreed to fix prices for all [products] at

3

any [one] meeting." *Id.* at *8. The Aggregators do not make such an argument. Plaintiffs' reliance on *Fasteners* is thus also misplaced.[1]

## II. Plaintiffs' Allegations Against the Aggregators Fail to Satisfy *Twombly*

In their opposition Plaintiffs list the allegations in their complaint against the Aggregators that they maintain are sufficient under *Twombly*: **(1)** by complying with their contracts with the Carriers, and not transmitting 10-digit A2P SMS traffic (which the Carriers would not accept for transmission to customers regardless of whether the Aggregators forwarded it), the Aggregators "enforced" the Carriers' alleged illegal conspiracy, Opp'n at 11; **(2)** an executive of one of the Aggregators allegedly said, "long codes . . . are not authorized by U.S. carriers," *id.*; Compl. at ¶ 67, and unspecified Aggregators have told unspecified customers, at unspecified times and places, that transmitting A2P SMS from 10-digit codes is "illegal," Opp'n at 11; Compl. at ¶ 65; **(3)** employees of unidentified Aggregators, at unspecified times and places, disclosed the identity of some unidentified CSC lessees who allegedly attempted to transmit A2P traffic using ten-digit codes, Opp'n at 11; and **(4)** the Aggregators collected "supra-competitive" fees for the Carriers, *id.* These allegations fall far below the *Twombly* plausibility bar.

---

[1]     Plaintiffs also seek comfort in *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010), and attempt to distinguish *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008). *See* Opp'n at 7-8, 22 n.31. *Starr*, however, merely recognized the distinction drawn in *Twombly* between parallel conduct indicative of a conspiracy and parallel conduct equally consistent with unilateral self-interested behavior. The *Starr* court held that where a plaintiff alleges parallel conduct that *cannot* be explained by independent self-interested action—*i.e.*, conduct that would be contrary to a firm's self-interest absent a conspiracy—a plaintiff is not required to allege a specific time, place, or person involved in *each* conspiracy allegation. 592 F.3d at 323-35. Unlike the plaintiff in *Starr*, Plaintiffs here allege no conduct by the Aggregators—parallel or otherwise—that is not consistent with unilateral self-interested behavior. Contrary to Plaintiffs' assertions, *Starr* does not excuse Plaintiffs from proffering sufficient allegations to render plausible a conclusion that *each* defendant was involved in the conspiracy. Regarding *Air Cargo*, Plaintiffs note the reversal of the magistrate's recommendation of dismissal of the complaint. Plaintiffs fail to mention that the basis for the reversal was, in large part, the fact that fifteen of the defendants in the civil action had pleaded guilty to criminal charges of illegal price-fixing and another three had entered the Department of Justice's leniency program. 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009).

*First*, as discussed in the Aggregators' opening brief, parallel compliance with the Carriers' conditions and terms of dealing does not support an inference of conspiracy among the Aggregators under *Twombly*. *See* Opening Mem. at 11-13, citing *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270 (S.D.N.Y. 2007). In *Wellnx,* the plaintiff alleged parallel conduct among industry competitors, and tried to allege "plus factors" that would suggest agreement (not just parallel conduct). 516 F. Supp. 2d at 290. The Court rejected the proffered plus factors—including allegations that horizontal competitors complied with identical terms and conditions set by a particular customer—as plausible grounds for inferring an agreement, because each was as consistent with independent conduct as with conspiracy, and thus did not satisfy *Twombly*. *Id.* at 290-91.

Plaintiffs' do not attempt to explain how their allegations against the Aggregators are different than those rejected by the *Wellnx* court, but rather attempt to distinguish *Wellnx* by quoting from the portion of the court's opinion that addresses the plaintiff's rule of reason claim. *See* Opp'n at 11, n.17. In doing so, Plaintiffs overlook the fact that they did not allege a rule of reason claim against the Aggregators. Moreover, even if they had, Plaintiffs' claim would fail for the same reason the *Wellnx* plaintiff's rule of reason claim failed. In *Wellnx,* the court held that the plaintiff could not support a rule of reason claim where they had admitted that the relevant market was competitive. 516 F. Supp. 2d at 294-5. Plaintiffs here likewise have admitted that the aggregator market, the only market in which the Aggregators participate, is

5

highly competitive—an admission that also is at odds with Plaintiffs' overarching allegation of a massive price-fixing and refusal to deal conspiracy.[2]

*Second*, Plaintiffs' ambiguous assertions that unspecified Aggregators told unspecified customers that use of 10-digit numbers for A2P SMS transmission is "illegal" cannot support a plausible inference of conspiracy. Even assuming, for purposes of this motion, that such a statement occurred and was an intentional misrepresentation, such unilateral conduct is fully consistent with independent self-interested behavior and cannot support the inference of an unlawful antitrust conspiracy.

Plaintiffs' references to an alleged statement that 10-digit codes are not authorized by U.S. carriers similarly in no way supports an inference of conspiracy. This alleged quotation only describes a single individual's view of the state of the U.S. A2P SMS industry; it does not even imply the individual's support for the Carriers' rules regarding A2P SMS transmission.

*Third*, Plaintiffs try to shore up the relevance of their assertions that unidentified Aggregators shared the identity of CSC lessees who failed to comply with the Carriers' CSC requirements by suggesting in their opposition that the purpose of the Aggregators' sharing was "to terminate [the lessees'] . . . access to CSCs." Opp'n at 22. Plaintiffs try to create the illusion that the Aggregators shared the names of CSC lessees who violated the Carriers' conditions and

---

[2] Plaintiffs have acknowledged since filing their complaint that the Aggregators are, in fact, quite independent and competitive. *E.g.* Pls.' Letters to J. Nathan (Dec. 10, 2012) (asserting that agreements with individual Aggregators are so competitively sensitive that allowing other Aggregators access to the pricing and terms contained in those agreements would harm Plaintiffs' ability to negotiate prices and terms with other competing aggregators); Pls.' Letter to J. Nathan (Aug. 27, 2012) (same); Compl. at ¶ 102 (recognizing that large volume CSC lessees may avoid the use of aggregators altogether and deal directly with the Carriers and the existence of non-Defendant aggregators); *id.* at ¶¶ 106-07 (recognizing that the Aggregators charge varying per-message fees); *id.* at ¶ 108 (recognizing that CSC lessees may switch from one Aggregator to another Aggregator). *See also Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002) (in considering a motion to dismiss, a court "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in . . . judicial proceedings that contradict the party's factual assertions."); *In re Microsoft Corp. Antitrust Litig.*, 168 F. Supp. 2d 541, 544 (D. Md. 2001) (concession that the relevant market was "fiercely competitive" undercut plaintiff's antitrust conspiracy claim).

then terminated, or refused to deal with, those lessees. That is not, however, what Plaintiffs alleged. Compl. at ¶ 111. Moreover, even if they had, such an allegation would not support an inference of antitrust conspiracy. There is nothing conspiratorial about a business's independent self-interest in protecting itself from disruptive customer conduct. *See, e.g., Michelman v. Clark-Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1047-48 (2d Cir. 1976) (holding that defendants' exchange of information regarding their mutual customer's credit-worthiness does not establish antitrust conspiracy because it "aids sellers in gaining information necessary to protect themselves against fraudulent or insolvent customers"); *Kasada, Inc. v. Access Capital, Inc.,* No. 01-cv-8893, 2004 WL 2903776, at *6 (S.D.N.Y. Dec. 14, 2004) (dismissing Section 1 claim where defendants' exchange of customer credit information was consistent with defendants' independent self-interest in protecting themselves against fraudulent or insolvent customers).

*Fourth*, Plaintiffs confuse the fees set and charged by the Carriers and/or Neustar with the fees charged by the Aggregators for services the Aggregators provide. Opp'n at 2, 5, 14-15. They attempt to blame the Aggregators for providing (and charging for) services that are required by the CSC system—a system Plaintiffs repeatedly acknowledge was neither created nor implemented by the Aggregators. *See id.* at 1-2. However, there are no allegations in the complaint that the Aggregators *set* fees associated with CSCs. Establishing fees for *the Aggregators' own services*, fees which have not been alleged to have been fixed, and which Plaintiffs in fact admit are quite competitive, is entirely consistent with independent self-interested conduct and cannot support an inference of conspiracy.

Aside from not adequately pleading facts from which an agreement can be inferred, Plaintiffs' specific antitrust theories are nonsensical. Plaintiffs claim there was a "group boycott," but there is no allegation that the Aggregators agreed to refuse to deal with

7

Plaintiffs. To the contrary, the Aggregators are in the business of helping customers send their messages to the Carriers, and Plaintiffs maintain that they were customers of certain Aggregators. No one was boycotted. Plaintiffs claim that there is a conspiracy to monopolize, but there is no defendant who is alleged to have a monopoly position or any likelihood of achieving a monopoly position. The idea that the Aggregators have "monopolized" something is bizarre given how fragmented and competitive the industry is, as Plaintiffs themselves acknowledge. And Plaintiffs claim that there was a "price-fixing" agreement. Price-fixing occurs when parties agree to eliminate price competition among themselves, but there is no allegation that the Aggregators were anything other than competitive with each other (*see* above at n.2). The Aggregators are a square peg in the round hole of Plaintiffs' case, which is why Plaintiffs are unable to articulate any theory that makes sense as applied to the Aggregators.

### III. The Statute of Limitations Bars All of Plaintiffs' Claims

Every Defendant argues that Plaintiffs' claims that all Defendants entered into a conspiracy in violation of the federal antitrust laws *in 2003* are barred by the four-year limitations period applicable to such claims. Plaintiffs have not shown that any exception to the statute of limitations applies, nor have they argued that the limitations period has been tolled.

Plaintiffs' entire argument against the Defendants' invocation of the statute is the "continuing violation" exception to the statute of limitations. Opp'n at 19-20. Plaintiffs present five alleged overt acts that they argue renew the limitations period pursuant to the exception: (1) WMC did not begin auditing the content of messages sent from CSC lessees until 2009 (Opp'n at 19); (2) OpenMarket contracted with TextPower in January 2010 (*id.*); (3) Plaintiffs have paid "supra-competitive fees" over the years (*id.* at 20); (4) the Carriers published new guidelines for use of CSCs in 2011 and 2012 (*id.*); and (5) the Defendants have exchanged the names of CSC

lessees who used ten-digit numbers for transmission of A2P SMS (*id.*).  None of these, however, is an overt act, nor are they the "compelling circumstances" that courts in this Circuit require to "warrant application of the [continuing violation] exception to the statute of limitations." *Vitale v. Marlborough Gallery*, 93-cv-6276, 1994 WL 654494, at *5 (S.D.N.Y. July 5, 1994).

Each alleged overt act does not qualify as an overt act: *First*, alleged introduction of a new auditor in 2009 does not qualify as an overt act, because an overt act must be new and independent and not merely a reaffirmation of a previous act, *and* must inflict new and accumulating injury on the plaintiff.  *See Rite Aid Corp v. AmEx Travel Rel. Serv. Co.*, 708 F. Supp. 2d 257, 268 (E.D.N.Y. 2010).  No new and accumulating injury could have been inflicted by WMC's entering the picture in 2009, because it merely facilitated continuation of audits that had already been conducted before 2009—outside of the limitations period.  Compl. at ¶¶ 113, 116, 119 (describing audits as existing "at all relevant times," before and after April 5, 2008).

*Second*, nowhere does the complaint allege that the "January 2010" contract between OpenMarket and TextPower included terms relating to transmission of messages pursuant to CSC leases that are different from any such terms with earlier CSC-lessee customers.  Compl. at ¶ 22.  Likewise, Plaintiffs have not alleged facts necessary to establish that this agreement is an overt act.  *See Allen v. Dairy Farmers of Am. Inc.*, 748 F. Supp. 2d 323, 350-51 (D. Vt. 2010) (contract renewal is a "reaffirmation" and not an overt act).

*Third*, payments pursuant to previously established rates—especially where, as the complaint avers, they were established in, *and have not changed since*, 2003—are not subsequent overt acts.  *See* Opening Mem. at 18; Carriers' Mem. at 23; Compl. at ¶ 77. Similarly, and *fourth*, new guidelines regarding transmission of messages by CSC lessees only reaffirm, and do not alter, the alleged 2003 agreement restricting A2P SMS transmission.  *See*

9

*also* Carriers' Reply (Jan. 24, 2013). Further, even if the guidelines imposed novel requirements on CSC lessees, notably absent from the complaint is any mention of the alleged 2011 and 2012 guidelines, which Plaintiffs only raise now to avoid dismissal on statute of limitations grounds. Opp'n at 20.

*Finally*, Plaintiffs' allege that CSC lessees' names have been exchanged "since April 5, 2008," which is conveniently precisely four years—precisely *to the day*—before the first of the Plaintiffs first filed its complaint. Plaintiffs scatter this exact date throughout the complaint to defend against Defendants' arguments for dismissal based on the statute of limitations—a tactic that does not alter their fundamental allegations that the CSC program was established in 2003, and that at "all relevant times" Defendants refused to deal with lessees (*see, e.g.,* Compl. at ¶¶ 64, 65, 72) and threatened to terminate them (*see id.* at ¶ 110), including by exchanging lessee names.

Because Plaintiffs have not shown that the disfavored continuing violation exception to the statute of limitations applies, this case must be dismissed on statute of limitations grounds.

## CONCLUSION

For the reasons stated above and in their opening brief in support of their Motion to Dismiss, the Aggregators respectfully request that the Court dismiss all claims against them with prejudice.

Dated: January 24, 2013                                   Respectfully submitted,

  /s/ Patrick J. Pascarella
Patrick J. Pascarella (*admitted pro hac vice*)
Dylan M. Carson (*admitted pro hac vice*)
Tucker Ellis LLP
925 Euclid Avenue, Suite 1150
Cleveland, Ohio 44115

10

Telephone:  (216) 696-4936
Facsimile: (216) 592-5009
Email: pat.pascarella@tuckerellis.com,
dylan.carson@tuckerellis.com

Steven A. Reiss (SR5889)
Adam C. Hemlock (AH6610)
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310 8174
Facsimile: (212) 310-8007
Email: steven.reiss@weil.com,
adam.hemlock@weil.com

*Counsel for Ericsson Inc., d/b/a Ericsson IPX*

  /s/ Sanket J. Bulsara                          `
Molly S. Boast (MSB2350)
Sanket J. Bulsara (SJB0679)
Christina Z. Milnor (*admitted pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
Email: molly.boast@wilmerhale.com,
sanket.bulsara@wilmerhale.com,
christina.milnor@wilmerhale.com

*Counsel for OpenMarket Inc.*

  /s/ Paolo Morante      
Paolo Morante (PM1017)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: paolo.morante@dlapiper.com

Laura M. Kam (*admitted pro hac vice*)
DLA Piper LLP (US)
2525 E. Camelback Road
Phoenix, AZ 85016
Tel:  (480) 606-5100
Fax:  (480) 606-5101

11

Email:  laura.kam@dlapiper.com

*Counsel for Air2Web, Inc.*

 /s/ Robert L. Sills
Robert L. Sills (RS8896)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5110
Facsimile: (212) 506-5151
Email: rsills@orrick.com

David F. Smutny (*admitted pro hac vice*)
Jeffrey Prokop (JP8155)
Ross Paolino (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8562
Facsimile: (202) 339-8500
Email: dsmutny@orrick.com,
jprokop@orrick.com, rpaolino@orrick.com

*Counsel for mBlox Incorporated*

 /s/ David I. Gelfand
David I. Gelfand *(admitted pro hac vice)*
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone: (202) 974-1690
Facsimile: (202) 974-1999
Email: dgelfand@cgsh.com

*Counsel for Sybase, Inc.*

 /s/ Jennifer Stewart
Jennifer Stewart (*admitted pro hac vice*)
Cooley LLP
500 Boylston Street
Boston, MA  02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
Email: jstewart@cooley.com

12

Jonathan Bach  (JPB9710)
Ian Shapiro (IS5120)
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: jbach@cooley.com,
ishapiro@cooley.com

*Counsel for SoundBite Communications, Inc. and 2ergo Americas, Inc.*

  /s/ Karl Geercken
Karl Geercken (KG5897)
90 Park Ave.
Alston & Bird LLP
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: karl.geercken@alston.com

Peter Kontio (*admitted pro hac vice*)
Mark A. McCarty (*admitted pro hac vice*)
Alston & Bird LLP
1201 West Peachtree St.
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: peter.kontio@alston.com,
mark.mccarty@alston.com

*Counsel for Syniverse Technologies LLC, f/k/a Syniverse Technologies, Inc.*

  /s/ Basileios Katris
Basileios Katris (*admitted pro hac vice*)
Horwood Marcus & Berk Chartered
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
Telephone: (312) 606-3221
Facsimile: (312) 606-3232
Email: bkatris@hmblaw.com

*Counsel for Vibes Media, LLC*

13

      /s/ Thomas E. Bezanson
Thomas E. Bezanson
Karen H. Bromberg
Nathaniel P.T. Read
Cohen & Gresser LLP
800 Third Avenue
New York, New York
Telephone: (212) 957-7604
Facsimile: (212) 957-4514
Email: kbromberg@cohengresser.com,
nread@cohengresser.com,
tbezanson@cohengresser.com

*Counsel for 3Cinteractive, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January 2013, I will electronically file the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all registered counsel of record.

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Christina Z. Milnor
    1875 Pennsylvania Avenue, NW
    Washington, DC 20006
    Telephone: (212) 663-6513
    Facsimile: (212) 663-6363
    Email: christina.milnor@wilmerhale.com
