UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE A2P SMS<br>ANTITRUST LITIGATION | MASTER FILE: 12 CV 2656 (AJN) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF JOINT MOTION OF
DEFENDANTS MBLOX INCORPORATED AND OPENMARKET, INC.
TO STAY PENDING ARBITRATION AND TO DISMISS THE SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

ORRICK, HERRINGTON & SUTCLIFFE LLP
Robert L. Sills
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile:  (212) 506-5151

David F. Smutny (admitted *pro hac vice*)
Jeffrey M. Prokop
Ross C. Paolino (admitted *pro hac vice*)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile:  (202) 339-8500

*Attorneys for Defendant mBlox Incorporated*

WILMERHALE LLP
Molly S. Boast
Sanket J. Bulsara
Christina Z. Milnor (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile:  (212) 230-8888

*Attorneys for Defendant OpenMarket, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    The mBlox MSA Requires Arbitration of Club Texting's Claims Against mBlox ........... 2

II.   The OpenMarket CSA and 4INFO CSA Require Arbitration of TextPower's, iSpeedbuy's and Club Texting's Claims Against OpenMarket ......................................... 5

    A.    TextPower's Relationship With OpenMarket .......................................................... 5

    B.    iSpeedbuy's Relationship With OpenMarket .......................................................... 7

    C.    Club Texting's Relationship With OpenMarket ...................................................... 8

III.  Arbitration Does Not Preclude TextPower and iSpeedbuy From Pursuing Their Federal Statutory Rights ....................................................................................................... 9

IV.  If Any Nonarbitrable Claims Remain After the Court Resolves the Aggregator Defendants' Motion to Dismiss, Those Claims Should be Stayed ...................................... 9

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Accenture LLP v. Spreng*,
  647 F.3d 72 (2d Cir. 2011)...................................................................................................3

*Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co.*,
  857 F. Supp. 2d 404 (S.D.N.Y. 2012).................................................................................8

*Alghanim v. Alghanim*,
  828 F. Supp. 2d 636 (S.D.N.Y. 2011).................................................................................9

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006).............................................................................................................2

*Church v. Gruntal & Co., Inc.*,
  698 F. Supp. 465 (S.D.N.Y. 1988) ......................................................................................6

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995).....................................................................................................6

*Cont'l Ins. Co. v. Allianz Ins. Co.*,
  52 F. App'x 557 (2d Cir. 2002) ...........................................................................................2

*CPR (USA) Inc. v. Spray*,
  187 F.3d 245 (2d Cir. 1999)........................................................................................ 2-3, 4, 5

*First Options of Chicago v. Kaplan*,
  514 U.S. 938 (1995).............................................................................................................6

*Gucci Am., Inc. v. Guess?, Inc.*,
  868 F. Supp. 2d 207 (S.D.N.Y. 2012)............................................................................. 7-8

*In re Am. Express Merchants' Litig.*,
  667 F.3d 204, *reh'g denied*, 681 F.3d 139 (2d Cir. 2012) *cert. granted*, No. 12-133
  (U.S. Nov. 9, 2012) ..............................................................................................................9

*Insta-Bulk, Inc. v. Powertex Inc.*,
  764 F. Supp. 52 (S.D.N.Y. 1991) ........................................................................................3

*Int'l Imaging Materials, Inc. v. Oliverio*,
  No. Civ-88-638E, 1988 WL 137717 (W.D.N.Y. Dec. 20, 1988) ............................................3

*Litton Fin. Printing Div. v. NLRB*,
  501 U.S. 190 (1991).............................................................................................................4

*Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*,
　　348 F.2d 693 (2d. Cir. 1965) ............................................................................................... 6, 7

*Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,
　　430 U.S. 243 (1977) ................................................................................................................ 4

*Raytheon Co. v. Nat'l Union Fire Ins. Co.*,
　　306 F. Supp. 2d 346 (S.D.N.Y. 2004) ................................................................................ 5, 6

*Reid v. SuperShuttle Int'l, Inc.*,
　　No. 08-CV-4854, 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ........................................ 5, 6

*Rent-A-Center, West, Inc. v. Jackson*,
　　130 S. Ct. 2772 (2010) ............................................................................................................ 2

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
　　198 F.3d 88 (2d Cir. 1999) ...................................................................................................... 5

*The Orange Chicken, L.L.C. v. Nambé Mills, Inc.*,
　　No. 00-cv-4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) ......................................... 9-10

*Wolff v. Westwood Mgmt., LLC*,
　　503 F. Supp. 2d 274 (D.D.C. 2007), *aff'd*, 558 F.3d 517 (D.C. Cir. 2009) ............................. 8

*World Love Prods., Inc. v. Keepers Indus., Inc.*,
　　No. 92 Civ. 7842, 1993 WL 6591 (S.D.N.Y. Jan. 5, 1993) ..................................................... 3

**STATE CASES**

*Poly-Pak Indus. v. Collegiate Stories Corp.*,
　　269 A.D.2d 130 (1st Dep't 2000) ............................................................................................ 5

**STATUTES**

9 U.S.C. § 3 ................................................................................................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 10

Defendants mBlox and OpenMarket respectfully submit this memorandum in further support of their Joint Motion to Stay Pending Arbitration and to Dismiss the Second Consolidated Amended Class Action Complaint (the "Joint Memorandum" or "Joint Memo.").[1]

## PRELIMINARY STATEMENT

Plaintiffs concede that there is a valid arbitration agreement between TextPower and OpenMarket, and offer no reason why any claims against OpenMarket should not be arbitrated in due course.  That concession strongly weighs in favor of having the remainder of this case—including any remaining claims by any other Plaintiff against OpenMarket, and any such nonarbitrable claims against mBlox—stayed.  Moreover, applicable law dictates that iSpeedbuy and Club Texting are equitably estopped from avoiding arbitration with OpenMarket because they received the substantial, direct benefit of sending A2P traffic to the Carriers' customers under contracts between OpenMarket and third parties—contracts that mandate arbitration of this dispute.

Club Texting's attempt to avoid arbitration with mBlox by asserting that the contract containing the applicable arbitration clause terminated in 2007 and that Plaintiffs' claims, as now recharacterized, date from April 2008 runs directly counter to well-established law and Plaintiffs' own pleadings in this case.  Plaintiffs' claims of an antitrust conspiracy beginning in 2003, of which mBlox was allegedly a part, come within the scope of the broad arbitration clause between Club Texting and mBlox.  Club Texting, like TextPower, must honor its contractual obligation to arbitrate.

---

[1]  Unless otherwise set forth herein, all capitalized terms have the same meaning as in the Joint Memorandum.

**ARGUMENT**

I.  **The mBlox MSA Requires Arbitration of Club Texting's Claims Against mBlox**

Plaintiffs' sole arguments offered in support of their claim that Club Texting does not have to arbitrate its claims against mBlox—consisting of four lines of text with no legal authority—is that the arbitration clause in the mBlox MSA did not survive when Club Texting canceled the mBlox MSA on December 20, 2007, and that Plaintiffs now only seek monetary damages for a time period beginning on April 5, 2008.  *See* Pls.' Memo. of Law in Opp'n to Defs.' Mots. to Compel Arbitration or Stay Case in Favor of Arbitration ("Pls.' Br.") at 16. Plaintiffs' arguments are inconsistent with the applicable law regarding the scope and effect of arbitration clauses in terminated contracts and ignore Plaintiffs' own allegations in the Complaint describing an alleged conspiracy dating to 2003.

It is bedrock principle of arbitration law that an arbitration clause is severable from the agreement of which it is a part.  *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Accordingly, an arbitration clause survives termination of the agreement of which it is a part, unless the parties expressly agree otherwise, and any claims falling within the scope of the arbitration clause after the contract's termination must still be arbitrated.  *See Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557, 558-59 (2d Cir. 2002) (affirming holding that arbitration clause survived termination of agreement of which it was a part because there was no explicit intent to rescind the arbitration clause); *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 255 (2d Cir. 1999) (noting "presumption in favor of post-expiration arbitration of matters 'arising out of the

relation governed by the contract.'") (citation omitted), *abrogated on other grounds by Accenture LLP v. Spreng*, 647 F.3d 72 (2d Cir. 2011); *World Love Prods., Inc. v. Keepers Indus., Inc.*, No. 92 Civ. 7842, 1993 WL 6591, at *2 (S.D.N.Y. Jan. 5, 1993); *Insta-Bulk, Inc. v. Powertex Inc.*, 764 F. Supp. 52, 53-54 (S.D.N.Y. 1991). Here, Club Texting provides no evidence—because there is none—nor does it even suggest that mBlox and Club Texting had any intent to terminate the arbitration clause in the mBlox MSA. Indeed, Club Texting's letter dated December 20, 2007 purporting to terminate the mBlox MSA does not even refer specifically to it, let alone its arbitration clause. *See* Cowell Decl., Exhibit C (stating that "Club Texting is cancelling [*sic*] its account MOBO1040307 for short code 313131.").

Club Texting suggests that the arbitration clause terminated because that clause is not among the provisions specifically identified in Section 16 of the mBlox MSA as surviving termination of the agreement. *See* Pls.' Br. at 16.[2] However, the survival provisions of a contract have no bearing on whether an arbitration clause survives, for the same reasons that termination of a contract has no bearing on whether the arbitration provision within the contract is terminated. Accordingly, courts have rejected the same claim that Plaintiffs make here concerning the survival clause in the mBlox MSA. *See, e.g.*, *Int'l Imaging Materials, Inc. v. Oliverio*, No. Civ-88-638E, 1988 WL 137717, at *1-2 (W.D.N.Y. Dec. 20, 1988) (holding that a contract provision providing for the survival of one clause after contract termination does not "terminate by negative implication all other clauses, including the arbitration clause").

Separately, Club Texting's assertion that its claims are not arbitrable because it only seeks damages for the period beginning on April 5, 2008 ignores the allegations of its Complaint. *See* Pls.' Br. at 16. The essence of the Complaint is that a purported illegal conspiracy began in

---

[2] In fact, Section 16 of the mBlox MSA goes on to state that "any other provisions that by their nature are intended to survive, also will survive termination of this Agreement." Cowell Decl., Ex. A at § 16.

3

2003 and continues today—a period that encompasses mBlox's and Club Texting's contractual relationship in 2007.  *See* Compl. ¶ 6 (Defendants "conspired to set up a system in 2003…"); *see also id.* ¶¶ 45, 60.  With respect to the allegedly supracompetitive prices paid by Plaintiffs, Plaintiffs contend that the "arbitrary [lease] rates have not changed since 2003 until the present." *Id.* ¶ 77.  Indeed, the declaration submitted by Plaintiffs' own economic witness states that, notwithstanding the alleged class period, an analysis of Plaintiffs' claims "likely will have to go back further to the origin of the CSC system in 2003 and before . . . ."  Declaration of Michael A. Williams, Ph.D., dated Nov. 30, 2012, ¶ 14.  Accordingly, the fact that Plaintiffs have now recast their damage claims—but not their theory of liability—to pertain to the period beginning on April 5, 2008, in an effort to avoid running afoul of the applicable statute of limitations, has no impact on the applicability of the arbitration clause in the mBlox MSA.  That is even more the case where Plaintiffs also seek injunctive relief permanently enjoining Defendants from "engaging in any of the conduct described" in the Complaint.  Compl., Prayer for Relief at D.

Accordingly, under governing law, Club Texting's claims are subject to arbitration because they "arise out of or relate to" the MSA.  In *CPR (USA) Inc. v. Spray*, *supra*, the court explained the rule as follows:

> The governing law was set forth by the United States Supreme Court in *Litton* [*Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)].
>
> . . .
>
> [T]he *Litton* Court reiterated support for the holding in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243 (1977), in which the Court found a presumption in favor of post expiration arbitration of matters and disputes 'arising out of the relation governed by the contract.' The *Litton* Court explained that post-expiration grievances arise under the contract, and are therefore arbitrable:  (1) when the dispute 'involves facts and occurrences that arose before expiration;' (2) when post-expiration action 'infringes a right that accrued or vested under the agreement;' or (3) when 'under normal principles

4

>of contract interpretation, the disputed contractual right survives expiration of the remained of the agreement.'

*CPR (USA) Inc.*, 187 F.3d at 255 (citations omitted); *see also Poly-Pak Indus. v. Collegiate Stories Corp.*, 269 A.D.2d 130, 131 (1st Dep't 2000) (compelling arbitration following termination because dispute bore "a reasonable relationship" to the contract containing the arbitration clause). Club Texting does not, and could not, dispute that the substance of its claims against mBlox "involve[ ] facts and occurrences that arose before expiration." *CPR (USA) Inc.*, 187 F.3d at 255 (citation omitted). It follows that all of Club Texting's claims should be stayed pending arbitration. *See* Joint Memo. at 13-17.

## II. The OpenMarket CSA and 4INFO CSA Require Arbitration of TextPower's, iSpeedbuy's and Club Texting's Claims Against OpenMarket

### A. TextPower's Relationship With OpenMarket

Plaintiffs nowhere contest the validity of the arbitration provision between TextPower and OpenMarket, nor its application to the subject matter of the dispute between the parties. Instead, Plaintiffs challenge only the provision's application to TextPower's claims against OpenMarket arising before January 2010. Pls.' Br. at 20. That argument is without merit.

*First*, the argument concedes that any claims between TextPower and OpenMarket arising after 2010 must be arbitrated. Given that concession, it would be appropriate for the Court to stay the remainder of the case, pending resolution of that arbitration, even if only those claims were arbitrable. *See* Joint Memo. at 20-24.

*Second*, as Judge Gleeson observed in 2010, the "Second Circuit had held that arbitration clauses without an express limitation to 'future disputes' should be applied to any pre-existing claims." *Reid v. SuperShuttle Int'l, Inc.*, No. 08-CV-4854, 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) (*citing Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999)); *see also Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F.

5

Supp. 2d 346, 357-58 (S.D.N.Y. 2004) (holding that disputes relating to insurance policies predating a collateral payment agreement containing an arbitration clause were arbitrable because that agreement "does not contain any temporally qualifying language"). Accordingly, because the applicable arbitration clause is broad and contains no express limitation to future disputes, all of TextPower's claims against OpenMarket are arbitrable, regardless of the date of the arbitration clause itself. *Reid*, 2010 WL 1049613, at *6 ("The relevant question is not when the plaintiffs' claims arose, but whether they arise under their agreements with the defendants."); *see Raytheon Co.*, 306 F. Supp. 2d at 357 ("This interpretation is particularly appropriate because a broad arbitration clause presumes that all disputes are arbitrable.").

      Plaintiffs cite two cases that they maintain preclude retroactive application of arbitration clauses. *See* Pls.' Br. at 20. First, in *Church v. Gruntal & Co., Inc.*, 698 F. Supp. 465 (S.D.N.Y. 1988), the court denied retroactive application of an arbitration clause because the arbitration agreement was "very specific and circumscribed." *Id*. at 469. In contrast, courts in this Circuit have repeatedly characterized language essentially identical to that in the TextPower agreement as paradigmatically "broad"—the type of language that *Reid* and *Raytheon* teach has retroactive application. *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see* Joint Memo. at 13-14. Second, *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693 (2d Cir. 1965), the other case relied on by Plaintiffs on this point, was decided well before the more recent guidance from the Supreme Court emphasizing the broad scope of arbitration provisions, in particular the powers of an arbitrator to determine the scope of an arbitration clause under *First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995), and the cases that have followed it. *See Necchi*, 348 F.2d at 696. More important, the retroactivity question in *Necchi* involved a dispute arising under an earlier "distinct and separate" contract without an arbitration

6

provision. *Id*. at 698. Here, there is no distinct and separate contract at issue, so that *Necchi*, even on its own terms, is inapplicable.

TextPower alleges a conspiracy founded before it entered into an arbitration agreement with OpenMarket, and continuing through the date of its agreement with OpenMarket and thereafter. Under the authorities discussed above, and the plain meaning of the arbitration clause TextPower executed, the entire dispute between TextPower and OpenMarket is arbitrable.

### B.   iSpeedbuy's Relationship With OpenMarket

OpenMarket explained in its opening brief that iSpeedbuy's relationship to it is entirely derivative of OpenMarket's relationship with TextPower. *See* Joint Memo. at 7-8. Thus, iSpeedbuy relies on fellow Plaintiff TextPower—which entered into an agreement with OpenMarket containing a "broad" arbitration clause—to conduct business. *See id.* at 7-8, 17-18. Without contesting that description of the relationship between iSpeedbuy, TextPower, and OpenMarket, Plaintiffs advance two arguments why, in their view, arbitration is inapplicable: (i) OpenMarket may not invoke equitable estoppel because of its "unclean hands" and (ii) iSpeedbuy could not have "known" of any agreement between TextPower and OpenMarket. *See* Pls.' Br. at 17-19. Neither provides a basis to deny OpenMarket's motion.

*First*, the unclean hands doctrine has no application in this context. That doctrine would be applicable only if OpenMarket had acted improperly with respect to the issue at hand—that is, in connection with entering into the arbitration agreement. In contrast, Plaintiffs' allegation of unclean hands is said to arise from setting up the alleged anticompetitive A2P SMS system. *See* Pls.' Br. at 1. Putting to one side that this argument simply assumes that Plaintiffs would succeed on their theory of liability, it is not an allegation of misconduct—even if it were accepted as true—that is related to the arbitration arrangement, and would not, therefore, preclude the invocation of equitable estoppel by OpenMarket. *See Gucci Am., Inc. v. Guess?,*

7

*Inc.*, 868 F. Supp. 2d 207, 245 (S.D.N.Y. 2012) (noting the doctrine of unclean hands permits relief only where the act is "related to the matter at issue"); *Wolff v. Westwood Mgmt., LLC*, 503 F. Supp. 2d 274, 283-84 (D.D.C. 2007) (compelling arbitration where alleged "unclean hands" were not connected to the making of the arbitration agreement), *aff'd*, 558 F.3d 517 (D.C. Cir. 2009). Under the FAA, liability is a question for the arbitrators, and not a defense to arbitration.

*Second*, Plaintiffs' assertion that iSpeedbuy lacked knowledge of the agreement between TextPower and OpenMarket because of the CSA's "secrecy provision" is nonsensical. Pls.' Br. at 20. iSpeedbuy is not independent from and unaffiliated with TextPower. Rather, its business exists only through its reliance on TextPower. *See* Joint Memo. at 7-8. In any event, even if iSpeedbuy were ignorant of the TextPower-OpenMarket agreement, that would be irrelevant. There is no requirement that iSpeedbuy have read the arbitration clause at issue. All that is required to invoke equitable estoppel is a showing that iSpeedbuy had a relationship with TextPower, by which iSpeedbuy knowingly derived benefits from TextPower's contract with OpenMarket. *See Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co.*, 857 F. Supp. 2d 404, 414-15 (S.D.N.Y. 2012). Plaintiffs do not deny that iSpeedbuy did precisely that.

### C.   Club Texting's Relationship With OpenMarket

In their Opposition, Plaintiffs concede that Club Texting does business as EZ Texting and that Club Texting relies on 4INFO for transmission of its messages. *See* Pls.' Br. at 17-18; Joint Memo. at 8-9, 18. Plaintiffs contend that 4INFO's agreement with OpenMarket cannot require arbitration of Club Texting's current claims for the same reasons it challenges the application of the OpenMarket CSA to iSpeedbuy. *See* Pls.' Br. at 17-20. Those reasons are as unavailing to Club Texting as they are to iSpeedbuy. As explained above, the unclean hands doctrine has no application here. There is also no requirement that OpenMarket show that Club Texting had knowledge of the agreement between 4INFO and OpenMarket. All that is required is for Club

8

Texting to knowingly derive benefits from 4INFO's contract with OpenMarket.  As Club Texting's CEO stated in a sworn declaration, Club Texting's business relies on connecting to the Carriers through 4INFO and OpenMarket, and without 4INFO or OpenMarket, it would have no connection to the Carriers.  *See* Joint Memo. at 8, 18.

### III. Arbitration Does Not Preclude TextPower and iSpeedbuy From Pursuing Their Federal Statutory Rights

TextPower's and iSpeedbuy's argument that the arbitration clauses at issue here are unenforceable under the Second Circuit's decision in *In re Am. Express Merchants' Litig.*, 667 F.3d 204, *reh'g den.*, 681 F.3d 139 (2d Cir. 2012) *cert. granted*, No. 12-133 (Nov. 9, 2012), because the costs of arbitration would prevent them from vindicating their federal statutory rights, is without merit for all of the reasons set forth in the Carrier Defendants' Reply in Support of Their Motion to Compel Arbitration.

### IV. If Any Nonarbitrable Claims Remain After the Court Resolves the Aggregator Defendants' Motion to Dismiss, Those Claims Should Be Stayed

Plaintiffs asserts that they will suffer "undue hardship" if the Court stays any nonarbitrable claims because the alleged "conspiracy is on-going" and "Defendants [will be] able to extract supracompetitive and unnecessary charges from Plaintiffs."  *See* Pls.' Br. at 30. Merely claiming that the conspiracy alleged in a complaint will continue is not the type of "undue hardship" required to avoid a stay; indeed, if it were, no stay pending arbitration could ever be granted.  *See, e.g.*, *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011). Moreover, Plaintiffs' assertion that "it is an open question whether any determination in an arbitration . . . would have any preclusive effect in this action" (Pls.' Br. at 30) is unfounded, because Plaintiffs assert identical claims against each Defendant.  Given the identity of these claims, arbitration under any of the applicable arbitration agreements "will likely provide significant insight into, if not actually resolve," any nonarbitrable claims.  *The Orange Chicken,*

9

*L.L.C. v. Nambé Mills, Inc.*, No. 00-cv-4730, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000); *see also* cases cited at Joint Memo. at 20-24.

## CONCLUSION

For the foregoing reasons, and those stated in the Joint Memorandum, mBlox and OpenMarket respectfully request that the Court enter an order (i) staying Club Texting's claims against mBlox, and TextPower's and iSpeedbuy's claims against OpenMarket, pursuant to 9 U.S.C. § 3 or, in the alternative, to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6); (ii) dismissing TextPower's and iSpeedbuy's claims against mBlox pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) to the extent the Court finds that Plaintiffs have stated any nonarbitrable claims under the Sherman Act, staying such claims pending arbitration of identical claims against Defendants.

January 24, 2013
New York, New York

| ORRICK, HERRINGTON & SUTCLIFFE LLP | WILMERHALE LLP |
|---|---|
| By: /s/ Robert L. Sills | By: /s/ Sanket J. Bulsara |
| Robert L. Sills | Molly S. Boast |
| 51 West 52nd Street | Sanket J. Bulsara |
| New York, New York 10019 | Christina Z. Milnor (admitted *pro hac vice*) |
| Telephone: (212) 506-5000 | 7 World Trade Center |
| Facsimile: (212) 506-5151 | 250 Greenwich Street |
| E-mail: rsills@orrick.com | New York, New York 10007 |
|  | Telephone: (212) 230-8800 |
| David F. Smutny (admitted *pro hac vice*) | Facsimile: (212) 230-8888 |
| Jeffrey M. Prokop | E-mail: |
| Ross C. Paolino (admitted *pro hac vice*) | sanket.bulsara@wilmerhale.com, |
| Orrick, Herrington & Sutcliffe LLP | molly.boast@wilmerhale.com, |
| Columbia Center | christina.milnor@wilmerhale.com |
| 1152 15th Street, N.W. | (signed with consent) |
| Washington, D.C. 20005-1706 | |
| Telephone: (202) 339-8400 | *Attorneys for Defendant OpenMarket, Inc.* |
| Facsimile: (202) 339-8500 | |
| E-mail: dsmutny@orrick.com, | |
| jprokop@orrick.com, rpaolino@orrick.com | |

*Attorneys for Defendant mBlox Incorporated*

10

### CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January 2013, I will electronically file the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all registered counsel of record. I further certify that the following non-registered counsel will receive service by First Class Mail.

Michael V. Pinkel
John E. Schmidtlein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Robert L. Sills
    Robert L. Sills
    51 West 52nd Street
    New York, NY 10019-6142
    Telephone: (212) 506-5000
    Facsimile: (212) 506-5151
    E-mail: rsills@orrick.com